## WILLIAMS v. NASHVILLE.

### (*Nashville.* January 10, 1891.)

1. CONSTITUTIONAL LAW. *Special laws affecting municipal corporations are valid.*

The territorial limits of an existing municipal corporation may be extended by a special law enacted for that sole purpose. Such Act is not within the constitutional prohibition that "no corporation shall be created, or its powers increased or diminished by special laws." This clause of the Constitution applies, not to municipal, but alone to private corporations.

Constitution construed: Art. XI., § 8.

Act construed: Acts 1890 (extra session), Ch. 33.

Cases cited and approved: State v. Wilson, 12 Lea, 246; Ballentine v. Pulaski, 15 Lea, 633.

2. SAME. *Same. Co-existent general and special laws.*

Although the general laws, and also the charter of the particular municipal corporation, have provided ample methods by which its boundaries might be extended without resort to further legislative action, yet the Legislature has the power to accomplish that end by special statute. Special laws of this character are not within the constitutional prohibition that "the Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land."

Constitution construed: Art. XI., § 8.

Cases cited and approved: Luehrman v. Taxing District, 2 Lea, 433; State v. Wilson, 12 Lea, 257.

3. SAME. *Same. Not deprivation of liberty or property.*

A special law extending territorial limits of a municipal corporation does not operate to deprive the owners of the included property either of liberty or property, and does not therefore violate the

Williams *v.* Nashville.

constitutional provision "that no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor;" or that other constitutional provision "that no man shall be ※ ※ ※ deprived of his life, liberty, or property but by the judgment of his peers or the law of the land."

Constitution construed: Art. I., §§ 8, 21.

Case cited: 67 U. S., 510.

4. SAME. *Same. Same.*

Nor does such statute violate that clause of the Federal Constitution which provides that "no person shall be ※ ※ ※ deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation."

Constitution construed: Fifth amendment Federal Constitution.

5. SAME. *Passage of laws at extra session previously rejected at regular session.*

The rejection of a bill at its regular session does not debar the Legislature from passing one, substantially the same, at a subsequent extra session of the same body, authorized by the Governor's call to legislate upon that particular subject. In the constitutional provision that "after a bill has been rejected, no bill containing the same substance shall be passed into a law during the *same session,*" the word "session" means "the space of time between the first meeting and the final adjournment of each particular sitting or term."

Constitution construed: Art. II., § 19.

6. STATUTES. *Passage of. Fraud. Motives.*

A statute regularly enacted by the Legislature cannot be declared void by the Courts upon the ground that its passage was procured by fraud.

Cases cited and approved: Lynn *v.* Polk, 8 Lea, 229; Ballentine *v.* Pulaski, 15 Lea, 634.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

COLYAR, WILLIAMSON & COLYAR and JOHN L. NOLEN for Williams.

J. M. ANDERSON, City Attorney, and ANDREW J. CALDWELL for Nashville.

CALDWELL, J. By Chapter 33 of Acts passed at the extra session of 1890, the General Assembly undertook to annex certain territory to the city of Nashville. The outer limits of the territory so annexed is defined by a very irregular line, with numerous angles, including and excluding property equally near the heart of the city, without any apparently good reason therefor. In two instances property belonging to manufacturing corporations, and situated near the interior of the annexed territory, was excluded by the exclusion of narrow strips of ground connecting that on which the factories and other buildings stand with the territory in the county.

The complainants owned property situated within the boundaries of the annexed territory. They brought this bill to restrain the city from collecting taxes and exercising municipal control over their property, and for general relief, on the allegation that said Act of Assembly is unconstitutional and void for several reasons specified.

The bill was dismissed on demurrer, and complainants have appealed, and assigned errors.

*First.*—It is insisted that the Act in question, being a special law, falls within the constitutional

prohibition that "no corporation shall be created, or its powers increased or diminished, by special laws" (Const., Art. XI., Sec. 8, clause 2), and that it is therefore void.

Without entering into a discussion of this provision of the Constitution, we content ourselves with a citation of cases in which it has been adjudged to apply only to private and not to municipal corporations. *State* v. *Wilson,.* 12 Lea, 246; *Ballentine* v. *The Mayor and Aldermen of Pulaski,* 15 Lea, 633.

*Second.*—Nashville's present city government was organized under the one hundred and fourteenth chapter of the Acts of 1883. The forty-eighth section prescribes the mode in which territory adjoining any municipal corporation organized thereunder may be brought within its corporate limits. Sections 1601 and 1602 of the Code also prescribe the mode in which "territory adjoining any municipality may be added thereto and included in the corporate limits thereof."

It is contended that these are general laws, and that, so long as they remain upon the statute books unrepealed, there are no other means by which the corporate boundaries of any town or city can be enlarged; that the Act impeached is void, because inhibited by the first clause of Section 8, Article XI., of the Constitution, which is in these words: "The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law

for the benefit of individuals inconsistent with the general laws of the land."

The statutes referred to are general laws in the sense that they present the same method of annexation to citizens and freeholders in territory to which they apply, respectively, throughout the State; but, pertaining, as they do, exclusively to municipalities in their political aspect, which may always be controlled as well by special as by general legislation, they do not stand in the way of the Act in question here, or render it unconstitutional. By their passage the Legislature did not surrender, and could not have surrendered, its power and obligation to enlarge or diminish the corporate limits of any town or city whenever the public exigency demands that it should be done. Incorporated towns and cities are but arms or instrumentalities of the State government—creatures of the Legislature—and subject to its control at will. It may establish and may abolish at pleasure. *Luehrman* v. *Taxing District,* 2 Lea, 433, and authorities there cited; 12 Lea, 257; 4 Pickle, 293; Cooley's Const. Lim., 230, 231.

To hold that the Legislature could not enlarge the corporate limits by an Act passed for that purpose, would be to deny that it could create or abolish; for the greater includes the lesser in law, as in mathematics.

Again, the Act complained of is not inconsistent with the general laws of the land, because by those laws the power to create or abolish, enlarge

or diminish, municipalities is reposed in the Legislature.

The power of annexation by a prescribed method, was conferred on citizens and freeholders concerned, and, at the same time, the inherent power of annexation by special Act, was left in the Legislature; the situation was as that of two laws coexisting, by either of which the same result might be accomplished, and in which resort to one would not be inconsistent with or a suspension of the other.

*Third.*—It is contended that this Act is void because in conflict with the fifth amendment to the Constitution of the United States, which provides that "no person shall be * * * deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation;" and also because in conflict with similar provisions of the Constitution of the State of Tennessee, "that no man shall be * * * deprived of his life, liberty, or property but by the judgment of his peers or the law of the land" (Art. I., Sec. 8); and "that no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Art. I., Sec. 21.

As a matter of course, the Act would be inoperative, null, and void, if, in fact, it violated any of those provisions. But it cannot be that

it does so. The extension of corporate limits so as to include additional territory is in no sense an impairment ·of the owner's liberty, nor is it a taking of private property for public use. If it were held to be so, then no municipal corporation could be established or enlarged, and none of these valuable ·instrumentalities of the State would have a lawful existence:

Even the statutes of annexation to which complainants ascribe the sanctity of general laws, would be utterly unavailing for the same reason.

Placing property within the corporate limits of a given town or city, where it will be subjected to the additional burden of municipal taxation and supervision, is not a *taking* of the property at all. The ownership is in no degree changed, and the increased burden is presumed to be equaled by the increased advantages.

"Eminent domain differs from taxation in that in the former case the citizen is compelled to surrender to the public something beyond his due proportion for the public benefit." Cooley's Const. Lim., 693.

"Taxation, however great, for a public purpose is not a taking of private property for public use within the meaning of a constitutional provision prohibiting such taking." 6 Am. and Eng. Ency. of Law, 562; *Gilmore* v. *The City of Sheboygan,* 2 Black (67 U. S.), 510.

*Fourth.*—The act assailed was passed at an *extra session.* A bill, in substance the same, had been

passed by the House of Representatives and rejected by the Senate at the *regular session.* Therefore it is alleged in the bill, and insisted in argument, that it was not a competent subject for legislation at the extra session, though embraced in the Governor's proclamation for an extra session as required by Section 9 of Article III. of the Constitution.

The position is that the power of that General Assembly—that particular body of Representatives and Senators—to legislate upon that subject was exhausted by the action taken at the regular session, and that the proclamation of the Governor could not restore that power.

If it be true, as assumed, that the General Assembly exhausts its constitutional power of legislation on a given subject for the full term of two years, by the rejection of a bill at the regular session, then it is manifest that the Governor cannot revive that power, and make it effective for an extra session; but that legislative power may be exhausted in that way, and to that extent, we do not admit. The language of the Constitution applicable to the case is as follows: "After a bill has been rejected no bill containing the same substance shall be passed into a law during the *same session.*" Art. II., Sec. 19.

"Session," as here used, means a particular sitting of the General Assembly; as, a *regular* sitting for the transaction of general legislative business, or an *extra* sitting for the transaction of special

legislative business named in the Governor's procla-
mation. It is the space of time between the first
meeting and the final adjournment of each par-
ticular sitting or term.

The Constitution virtually so defines the word.
It provides for different sittings, and calls each of
them a "session:" "But no member shall be
paid for more than seventy-five days of a *regular
session*, or for more than twenty days of an *extra
or called session*," etc. Article II., Sec. 23.

*Fifth.*—It is alleged that this Act was conceived
and its passage procured by private persons for
sinister motives; that the lines were irregularly
and arbitrarily run (as described on the first page
of this opinion) for the purpose of oppressing
complainants by including their property, and favor-
ing certain rich corporations and wealthy persons
by excluding their property; that this was the re-
sult of an agreement between the persons and
corporations to be excluded and a few members of
the Legislature, and was *a fraud* on the Legisla-
ture and on the rights of property owners included.

The facts here charged, if admitted to be true
(as they are by the demurrer), do not render the
Act void.

That a bill is inspired by private persons for
their own advantage, and to the detriment of
others, is clearly not a sufficient reason for hold-
ing the law void when passed. Nor can the
Courts annul a statute because the Legislature
passing it was imposed upon and misled by a few

of its members in conjunction with interested third parties. If the Act in question is unwise and oppressive, the evil may be remedied by repeal or amendment.

The Courts have nothing to do with the policy of legislation, nor the motives with which it is made. *Lynn* v. *Polk*, 8 Lea, 229, 293; 15 Lea, 634.

Affirm the decree.