STOCKER *v.* CITY OF NASHVILLE.

(Nashville, December Term, 1938.)

Opinion filed April 1, 1939.

ELKIN GARFINKLE and DAN GARFINKLE, both of Nashville, for plaintiff in error.

TRABUE, HUME & ARMISTEAD and REBER BOULT, all of Nashville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The City of Nashville owns a large parklike area lying beyond the City limits, on which it has erected and maintains a municipal Airport, pursuant to the provisions of Chapter 116, Public Acts of 1933 (Williams' Annotated Code, Section 2726.22), the caption and material parts of which are as follows:

"An Act to prohibit the bringing or maintaining of any action or suit against any municipality, or its officers, agents, servants or employees, in or about the superintendent or management of any municipal airport.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the construction maintenance and operation of municipal airports is hereby declared a public governmental function, and no action or suit shall be brought or maintained against any municipality, or its officers, agents, servants or employees, in or about the construction, maintenance, operation, su-

perintendence, or management of any municipal airport.''

Plaintiff alleges that while walking along a pathway through these grounds she struck against a wire stretched along a grass plat in close proximity to the pathway, about six inches high, and was thrown to the ground and injured, for which she sues. A demurrer was sustained by the trial Judge, and plaintiff appealed.

The first ground of the demurrer denied liability of the municipality for negligence in the construction and maintenance of this Airport, or Flying Field. Reliance is had, first, on the provisions of the Act above quoted, and, second, on the proposition that the ownership and maintenance of such an operation is a governmental, as distinguished from a proprietary, function, which excludes liability of the municipality, independent of the statute.

Plaintiff asserts that the Act above quoted is unconstitutional because, first, it violates Article 2, Section 17, which provides that, ''no bill shall become a law, which embraces more than one subject; that subject to be expressed in the title,'' in that the bill embraces two subjects, (1) the legislative declaration that the operation of a municipal airport is a governmental function, and (2) a provision for an exemption from suit, while the caption refers to one of these only. Also, that since the exemption set out in the title is restricted to suits in and about ''the superintendent or management'' only, and the body of the Act embraces also ''construction, maintenance, operation, superintendence, or management,'' the body of the Act is broader than its caption.

We do not find merit in either of these objections. The Act is confined to but one subject, germane to and clearly suggested by the caption, that is, the exemption of

municipalities and their servants from suit growing out of the operation of an airport. The declaration is not independent matter, but merely incident to the enactment, and expressive of the principle on which the enactment rests.

 It is next said that the Act creates an arbitrary classification and is, therefore, obnoxious to Article 1, Section 8, and Article 11, Section 8, of the State Constitution and the Fourteenth Amendment to the Federal Constitution. Obviously, there is no discrimination between municipalities of the State, or between municipal airports. *Fleming* v. *Memphis*, 126 Tenn., 331, 148 S. W., 1057, 42 L. R. A. (N. S.), 493, Ann. Cas., 1913D, 1306, holding immunity granted the Taxing District of Memphis arbitrary and unconstitutional legislation because not applicable to other municipalities of the State, is not controlling. The statute before us applies to all Tennessee municipalities alike.

But, the charge is of a discrimination between municipally owned airports and municipally owned electric light plants, etc., the predicate of this theory being that the municipality, in such an operation, is acting in its private, proprietary, rather than its public, governmental capacity.

This theory not only assumes a classification for municipally owned airports which we do not find to have been fixed by any decision of this Court, but is in the teeth of the declaration of the legislature hereinabove quoted.

It has been repeatedly suggested that the line between municipal operations that are proprietary, and, therefore, may be made the basis of suits for tort, and those that are governmental and, therefore. immune, is not

clearly defined. In Volume 131 of the Tennessee reports, this Court, in *Saulman* v. *Nashville*, at page 427, 175 S. W., 532, L. R. A. 1915E, 316, Ann. Cas., 1916C, 1254, places a municipal light plant in the proprietary class, and in *Mayor and City Council of Nashville* v. *Burns*, 131 Tenn., at page 281, 174 S. W., 1111, L. R. A., 1915D, 1108, places a municipal park in the governmental class.

In concluding his opinion in *Irvine* v. *Chattanooga*, 101 Tenn., 291, 47 S. W., 419, 421, in which operation of a fire department was held to be a governmental function, and recovery for alleged negligence was denied, Mr. Justice McALISTER remarked that, "The distinction may be a little metaphysical, and at times difficult of application, but it is well settled." So, Mr. Justice LURTON, in *Davis* v. *Knoxville*, 90 Tenn., 599, 18 S. W., 254, refers to this difficulty in application of classification. However, we are not confronted with any such difficulty in the present case.

The clear and unmistakable terms of the Act under which the City of Nashville maintains and operates this Airport leaves no room for construction or debate as to classification and we find no valid reason for refusing to give effect to its immunity provision.

We have here a direct legislative declaration on which is conditioned the grant of power to municipalities to engage in this enterprise that it is a "public governmental function," and that the municipality shall not be subject to suit on account of the exercise thereof.

In line with expressions of this Court, in *Scott* v. *Village of Saratoga Springs*, 199 N. Y., 178, 92 N. E., 393, 394, the New York Court of Appeals approves this excellent statement by Judge GRAY, in the earlier case of

*MacMullen* v. *Middletown,* 187 N. Y., 37, 79 N. E., 863, 11 L. R. A. (N. S.), 391, of the applicable principle:

"A municipal corporation is a political, or governmental, agency of the state, which has been constituted for the local government of the territorial division described and which exercises, by delegation, a portion of the sovereign power for the public good. In its organization, and in the assignment of its powers and duties, the Legislature acts supremely. The power to grant, or to deny, a remedy by private action for the breach of a duty, imposed upon it for governmental purposes, . . . is not one which should be called in question."

In the recently decided case of *Keifer & Keifer* v. *Reconstruction Finance Corporation,* 59 S. Ct., 516, 518, 83 L. Ed., —, the Supreme Court of the United States, in the course of its opinion, thus emphatically recognized the power of the Federal government to pass on to governmental agencies that immunity from suit which is an incident of sovereignty: "Congress may, of course, endow a governmental corporation with the government's immunity. But always the question is: has it done so?", citing cases. In that case the question was only whether or not Congress had done so. We see no reason why this is not as true of the State government, acting through the Legislature, as of the Federal government acting through Congress.

We are cited to one case, decided by the Court of Civil Appeals of Texas, *Christopher* v. *City of El Paso,* 98 S. W. (2d), 394, 397, holding unconstitutional an exemption from liability to suit provision in a statute authorizing municipalities to acquire and maintain airports. Vernon's Tex. Ann. Civ. St., Art. 1269h. But that statute differs from the one before us in the important particular that it contained no declaration as a predicate for the ex-

emption from suit, as does the Tennessee statute, that the maintenance and operation of municipal airports is a public governmental function. What is said in that opinion and its citations indicates the importance of this difference. In Texas all municipally maintained and operated activities are held to be proprietary enterprises and, says the Court in the case mentioned, "cities were subject to the same liability in their maintenance and operation as others engaged in like enterprises." Consistently with this rule, the Court held that the statute contravened the equal protection clause of the Federal Constitution, and cited cases holding exemptions void for discrimination, none of which involved governmental agencies, declared to be exercising governmental functions and immune from suit. Whether this decision be sound or not on its facts, we need not say. It is not in point here.

Finally, a second ground of the demurrer sustained by the trial Court denied application of the theory of a nuisance advanced for plaintiff. Without passing on the question whether or not on this theory an action might lie in a proper case, we think it sufficient to say, without further lengthening this opinion by elaboration, that we do not find on this declaration a case of nuisance stated. Conceding, but not deciding, that the stringing of a wire along the border of a walkway to protect an adjacent grass plat from encroachment by passing pedestrians might be held to be actionable negligence, essential elements of a nuisance was wanting. Such a precautionary provision is a matter of common and usual practice, a recognized method of protection under such conditions.

It results that the judgment is affirmed, and the suit dismissed.