JAMES M. THORNTON, Plaintiff in Error, v. W. M. CARRIER, RUTH CARRIER, WILLIAM CARRIER, JR., D/B/A CARRIER EXCAVATION & FOUNDATION CO., CARRIER EXCAVATION & FOUNDATION CO., INC., and CITY OF MEMPHIS, Defendants in Error.—311 S. W. (2d) 208.

Western Section. December 11, 1957.

Petition for Certiorari denied by Supreme Court March 4, 1958.

616

W. C. Rogers, Memphis, for plaintiff in error.

Frank B. Gianotti, Jr., James M. Manire, and Frierson Graves, Jr., Memphis, for defendants in error.

BEJACH, J. The plaintiff in error, James M. Thornton, who was plaintiff in the lower court, seeks a reversal of rulings made by the lower court in granting a motion for a directed verdict made on behalf of the City of Memphis after the opening statement of counsel for plaintiff, before any evidence had been introduced, and in striking from the record an amended declaration which made the other defendants parties to this suit a second time, after they had been previously dismissed on their plea in abatement. As stated in the brief filed on behalf of plaintiff in error:

"There are two (2) basic propositions to be determined in this cause:

"First, whether the City of Memphis can engage in the development of a private project, President's Island, for profit and escape liability for its negligence, under the cover of 'governmental functions'.

"In its final analysis this may develop into a question as to whether the Legislature can by its enactments, declare a non-fact to be a fact, and make it stick.

"Second, plaintiff seeks to reach the contractor's liability insurance carrier, if any; if not, the contrac-

tor, as a self-insurer, where they or it agree to protect the contractee, the City of Memphis, from all liability arising under the contract, with proper insurance coverage.''

For convenience, the parties will be styled, as in the lower court, plaintiff and defendant or defendants, as the case may be, or called by their respective names.

As originally filed, this suit was against W. M. Carrier, Ruth Carrier, William P. Carrier, Jr., doing business as Carrier Excavation and Foundation Co., the Carrier Excavation and Foundation Co., Inc., and the City of Memphis. Plaintiff's declaration alleges that the three individual defendants, as a partnership, entered into a contract with the City of Memphis to construct a sewer line on President's Island, which contract was later assumed by the corporation, the Carrier Excavation and Foundation Co., Inc., after the organization of said corporation. It is alleged that in connection with the work involved in this contract, the City of Memphis was acting in its corporate or proprietary capacity and that same was not a governmental function. It is alleged that the plaintiff is an experienced drag-line operator and bulldozer operator working for the Carrier Excavation and Foundation Company in connection with the construction of said sewer line on President's Isand, that a right of way 100 feet in width was staked off, that plaintiff was directed by his employers to operate a bull-dozer in clearing off this right of way by pushing back dirt and debris toward the right of way boundary lines, that in connection with his performance of this work, an inspector of the City of Memphis ordered plaintiff to take the bull-dozer and push back farther some of the debris

which was on or near said right of way, and that in doing so, a large tree was flipped over by a smaller tree so that it fell on the seat of the bull-dozer which plaintiff was operating, pinning plaintiff down and inflicting serious and permanent injuries. The declaration alleges that the negligence of defendants which caused his injuries consisted of violation of legal requirements and a provision of the contract between the Carrier Excavation and Foundation Co. and the City of Memphis, which required that the bull-dozer be equipped with a heavy well-supported arched steel canopy. The use of said bull-dozer without such canopy was also alleged to be in violation of the Memphis Building Code, Section 3011.18, which provides: "All equipment devices and machinery used in the erection of construction coming under the supervision of and subject to inspections by the Department of Public Service shall be of a type required by the several Bureaus of said Department and shall be so installed as to insure safety of workmen employed and protect the public welfare." Plaintiff sues for $50,000 damages and demands a jury to try the issues when joined.

A plea in abatement was filed on behalf of defendants, W. M. Carrier, Ruth Carrier, William P. Carrier, Jr., Carrier Excavation and Foundation Company, and Carrier Excavation Co., Inc., which sets up that said defendants were operating under the Workmen's Compensation Law of Tennessee, that same had been fully complied with, and that plaintiff had been paid by the Bituminous Casualty Corp., the insurer for said defendants, weekly payments and medical expenses as required by said Workmen's Compensation Law. This plea in abatement was sustained and the said defendants were dismissed from this cause. The defendant City of Memphis filed

pleas of not guilty, contributory negligence, and that the acts or omissions charged against the City of Memphis were referrable to activities of a governmental character, for the consequences of which said defendant is entitled to governmental immunity. Later, the City of Memphis, having been by court order required so to do, filed special pleas which reiterate said defenses with more elaboration. By an amendment to said special pleas, the City of Memphis sets up that the work alleged and referred to in plaintiff's declaration was carried out in accordance with a contract authorized under Chapter 500 of the Private Acts of 1947, and that in addition to all of its other defenses heretofore pleaded, said defendant relies upon Section 17 of said Chapter 500, Private Acts of 1947, which is as follows:

"Development, maintenance, etc., of harbor and port declared a public governmental function; restriction as to actions.—The development, maintenance and operation of and all matters incident to the ownership of the harbor and port provided for and authorized herein is declared a public governmental function and no action shall be brought or maintained against the Harbor and Port Commission or the City of Memphis, on account of any claim arising from or growing out of either one or all of the aforesaid provisions and/or authorizations."

At this stage of the case, the Bituminous Casualty Corporation which carries the workmen's compensation insurance for the Carrier Excavation and Foundation Co., Inc., filed an intervening petition in which it asserts that it has paid plaintiff James M. Thornton on account of his injuries the total sum of $5,724.13, and it became a

party to this cause for the purpose of asserting a lien against whatever recovery, if any, plaintiff might obtain against the City of Memphis.

Thereafter, on January 2, 1957, plaintiff filed a motion for leave of court "to amend his original declaration herein so as to add as parties defendant, the Carrier Excavation and Foundation Co., Inc., and W. M. Carrier, Ruth Carrier, and William P. Carrier, Jr., as individuals, partners or associates doing business as Carrier Excavation and Foundation Co., the original signers or contractors, under the contract described in the original declaration herein, and their liability insurance carriers, if any, if not, as self-insurers under the terms and provisions of said contract as provided by paragraph entitled 'Indemnity' under 'General Conditions of the Contract' and paragraphs numbers 2 and 5 under the heading 'Construction Regulations', sub-paragraph '(b)' thereof, by which they obligated themselves to carry such insurance to which this plaintiff is entitled." This motion was granted by an order of court entered January 11, 1957, and on that date, plaintiff filed an amended declaration which for a second time makes said parties defendants to this suit, and alleges that the contract between said defendants and the City of Memphis, by provisions of same which are copied into the amended declaration, require said defendants to indemnify and save harmless the City of Memphis on account of any injuries to any person or property, and requires the contractor to carry public liability insurance in the amount of not less than $20,000 for injuries including accidental death, to any one person, and, subject to the same limit for each person, in an amount not less than $40,000, on account of one accident; and property damage insurance in an

amount not less than $10,000. Said amended declaration alleges that plaintiff is entitled to the benefits of any such insurance carried for protection of the City of Memphis, and that, if no insurance was carried, then to have a recovery against said defendants as self-insurers. Thereafter, on February 1, 1957, orders of court were entered which set aside the order allowing the aforesaid amendment to make the Carriers individually and the Carrier Excavation and Foundation Co., Inc., parties to this suit, struck from the files the said amended declaration, and also set aside the order allowing the Bituminous Casualty Corporation to become a party to this cause. Thereafter, on February 6, 1957, plaintiff again made a motion to amend his declaration by adding said new parties to this cause as parties defendant, which motion, treated as a motion for a new trial, was on Feb. 8, 1957, taken under advisement by the court and which was, by order entered Feb. 25, 1957, overruled; to which action of the court plaintiff excepted.

On April 5, 1957, plaintiff filed a response to the special pleas of the defendant City of Memphis, and, with the cause thus at issue, same came on for hearing against the City of Memphis April 8, 1957; all other parties to the cause having been eliminated, as hereinabove set out.

On April 8, 1957, after a jury had been impaneled and after counsel for plaintiff had stated his case to the jury, but before any evidence had been offered, counsel for defendant, City of Memphis, moved for a directed verdict against the plaintiff, which motion was granted by the trial court. Plaintiff then filed his motion for a new trial, which was overruled, and his appeal in the nature of a writ of error to this court has been perfected.

In this Court, as plaintiff in error, plaintiff has filed three assignments of error, which are as follows:

*"Assignment of Errors*

"I

"The trial court erred in holding the City of Memphis to be engaged in the performance of a governmental function in the development, and particularly, in the laying of the sewer pipe under the contract entered into with the Carrier Excavation & Foundation Company on January 25, 1955, involved in this cause, because it is evident that the development of President's Island, out of which the City expects and will obtain a profit is in truth and in fact, a private enterprise, and the City's activities with reference thereto, notwithstanding the Legislative Act to the contrary, contained in Chapter 500 of the Private Acts of 1947, Section 17, is in truth and in fact a proprietary or private corporate function of said City, and dismissing his suit.

"II

"The lower court erred in setting aside plaintiff's amendments of his Declaration so as to sue the contractor, its or their insurance carrier, and surety, on its contract, and in denying him leave to do so, because, under the terms and provisions of said contract, as therein set out, the said contractor was bound and obligated to carry liability insurance not oniy for the protection of the principal contractor and any subcontractors, but for the contractee, the City of Memphis, and the negligent acts of any of

its agents or servants, resulting in injuries to persons employed or working for said contractor or on said project, the laying of said sewer line, etc., and particularly, those inflicted upon this plaintiff as a consequence of the neglect of the City's Inspector, etc., as aforesaid.

### "III

"The Court erred in not submitting to the jury, as a question of fact, the issue as to whether the City of Memphis was acting in its proprietary or governmental capacity in the performance of said contract, and as to whether or not plaintiff either assumed the risk or was guilty of contributory negligence in obeying the order of the Inspector in the manner and under the circumstances resulting in plaintiff's injuries."

These assignments of error present for determination by this Court, the two questions set out at the beginning of this opinion, viz., first, whether or not the City of Memphis is entitled to immunity from suit in this cause, by reason of its performance of a governmental function; and, second, whether or not, if the City of Memphis is entitled to governmental immunity, plaintiff is entitled to reach and have the benefit of any public liability insurance carried by the Carrier Excavation and Foundation Company under its contract with the City of Memphis, or, in the alternative, if no such insurance was carried, then to recover against the Carriers as individuals and the Carrier Excavation and Foundation Co., Inc., as self-insurers.

The first contention of plaintiff is that the City of Memphis expects to make a profit from its development

of the President's Island project, and that this makes such operation a corporate or proprietary act of the City of Memphis, for which it is not entitled to invoke the defense of governmental function, the provisions of Section 17, Chapter 500, Private Acts of 1947, to the contrary notwithstanding. Plaintiff's second contention is that, in any event, he is entitled to the benefit of any public liability insurance carried by the contractor, as required by its contract with the City of Memphis, and, if no such insurance was carried, that he is entitled to recover against said contractors as self-insurers. We will take up these contentions separately.

No question is made as to the propriety of the action of the learned trial judge in granting the motion of the City of Memphis for a directed verdict, based on the statement of the case made by plaintiff's counsel before any proof was offered, if the defense of "governmental function" interposed by the City of Memphis is good; nor do we think such practice could be properly criticized. Such practice was expressly approved as early as 1880 by the Supreme Court of the United States in the case of Oscanyan v. Arms Co., 103 U. S. 261, 262, 263, 26 L. Ed. 539. With reference to such practice, in that case, speaking for the U. S. Supreme Court, Mr. Justice Field said:

"When it was called for trial, and the jury was empaneled, one of the plantiff's counsel, as preliminary to the introduction of testimony stated to the court and jury the issues in the case, and the facts which they proposed to prove. From such statement, it appeared that the sales for which commissions were claimed by the plaintiff were made whilst he was an officer in the Turkish government and

through the influence which he exerted upon its agent sent to this country to determine and report in regard to the purchase of arms. The particulars of the services rendered will be more fully mentioned hereafter. It is sufficient now to say that the defendant, considering that the facts which the plaintiff proposed to prove showed that the contract was void as being corrupt in itself and prohibited by morality and public policy, upon which no recovery could be had, moved the Court to direct the jury to render a verdict in its favor.

\* \* \* \* \* \*

"In the trial of the cause the admissions of counsel, as to matters to be proved are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. Indeed, any fact bearing upon the issues involved, admitted by counsel, may be ground of the Court's procedure equally as if established by the clearest proof. And if in the progress of a trial, either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may upon its own motion, or that of counsel, act upon it and close the case."

The analogy between freedom from liability on the contract sued on in the Oscanyan case, because of illegality of same which appeared from counsel's statement of the case, and that of freedom from liability in tort in the instant case, because of governmental immunity, should be obvious. In the instant case, however, counsel for plaintiff contends that the mere fact that the City of

Memphis may make a profit from the port and harbor project on President's Island, makes the project a corporate or proprietary function for which the City of Memphis may be held liable in tort, and that the defense of governmental immunity is not available, even though Section 17, Chapter 500, Private Acts of 1947, expressly provides for such immunity.

██ In support of his contention that, because the City of Memphis may ultimately realize a profit from operation of the President's Island Port and Harbor project, such operation must be considered a private or proprietary activity, counsel for plaintiff cites Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346, 112 S. W. (2d) 817, and Saulman v. Mayor and City Council of Nashville, 131 Tenn. 427, 175 S. W. 532, 533, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254. These cases are authority for the proposition that, generally speaking, the operation of a municipal lighting plant is a corporate or proprietary function rather than a governmental function. In the Nashville case, it was so held, even though the power generated by the municipal plant was used exclusively by the city itself. The argument of counsel for plaintiff in the instant case is that the operation of the President's Island Port and Harbor project by the City of Memphis should be treated like its operation of its municipal light and power plant. This argument ignores the express legislative declaration contained in Section 17 of Chapter 500, Private Acts of 1947, that said project is expressly "declared a public governmental function", with a further express provision that "No action shall be brought or maintained against the Harbor and Port Commission or the City of Memphis, on account of any claim arising from or growing out of either one or

all of the aforesaid provisions and/or authorizations.''
But, it is asserted that such legislative declaration is
unconstitutional and void, and that such legislative enact-
ment amounts to a declaration that something is a fact
which is not a fact. In his original brief, counsel for
plaintiff, in making this assertion of unconstitutionality
of this statute, fails to point out any article or section,
either of the Constitution of Tennessee or that of the
United States, which is violated, and makes no argument
in support of this contention other than his bald assertion
that such legislation is unconstitutional. Nevertheless,
''In Tennessee it is a settled doctrine of constitutional
law that 'the legislative power of the general assembly
of this state extends to every subject, except in so far
as it is prohibited, either by the delegated powers of the
federal government or by the restriction of our own con-
stitution. He who would show the unconstitutionality of
an act of the legislature must be able to put his finger
upon the provision of the constitution violated.' '' Dibrell
v. Morris' Heirs, 89 Tenn. 497, 15 S. W. 87, 90, 12 L. R. A.
70. In his reply brief, counsel for plaintiff does go a lit-
tle beyond his former bald assertion by maintaining that
the city's interpretation of Section 17 of Chapter 500,
Private Acts of 1947, ''necessarily makes this Act arbi-
trary and *discriminatory* in violation of Article I, Sec-
tion 8 and Article XI, Section 8 of the State Constitution,
as well as the Fourteenth Amendment of the Federal
Constitution''; but even there, he fails to point out in
what respect or why said legislative enactment violates
either of these constitutional provisions. In Stocker v.
City of Nashville, 174 Tenn. 483, 126 S. W. (2d) 339, 124
A. L. R. 345, which is, on its facts, more nearly like the
case at bar than any case which we have found, the

Supreme Court expressly held that an Act of the Legislature which declares, "that the construction, maintenance and operation of municipal airports is hereby declared a public governmental function, and no action or suits shall be brought or maintained against any municipality, or its officers, agents, servants or employees, in or about the construction, maintenance, operation, superintendence or management of any municipal airport" does not violate Article I, Section 8, Article XI, Section 8 of the Constitution of Tennessee, or the Fourteenth Amendment of the Federal Constitution. From the opinion in that case, so holding, written by Mr. Justice Chambliss for the Supreme Court, we quote:

"But, the charge is of a discrimination between municipally owned airports and municipally owned electric light plants, etc., the predicate of this theory being that the municipality, in such an operation, is acting in its private, proprietary, rather than its public, governmental capacity.

"This theory not only assumes a classification for municipally owned airports which we do not find to have been fixed by any decision of this Court, but is in the teeth of the declaration of the legislature heretofore quoted.

"It has been repeatedly suggested that the line between municipal operations that are proprietary, and, therefore, may be made the basis of suits for tort, and those that are governmental and, therefore, immune, is not clearly defined. In Volume 131 of the Tennessee Reports, this Court in Saulman v. Mayor and City Council of Nashville, at page 427, 175 S. W. 532, L. R. A. 1915E, 316, Ann. Cas. 1916c, 1254, places

a municipal light plant in the proprietary class, and in Mayor, and City Council of Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111, L. R. A. 1915D, 1108, places a municipal park in the governmental cases.

\* \* \* \* \* \*

"In the recently decided case of Keifer & Keifer v. Reconstruction Finance Corporation [306 U.S. 381], 59 S. Ct. 516, 518, 83 L. Ed. 784, the Supreme Court of the United States, in the course of its opinion, thus emphatically recognized the power of the Federal government to pass on to governmental agencies that immunity from suit which is an incident of sovereignty: 'Congress may, of course, endow a governmental corporation with the government's immunity. But always the question is: Has it done so?' citing cases. In that case the question was only whether or not Congress had done so. We see no reason why this is not as true of the State government, acting through the Legislature, as of the Federal government acting through Congress." Stocker v. City of Nashville, 174 Tenn. 483, 486-488, 126 S. W. (2d) 339, 340, 124 A. L. R. 345.

In our opinion, there is no essential difference in character between the building, operating, and maintaining of an airport for airborne transportation and commerce and that of building, operating and maintaining a harbor or port for water borne transportation and commerce. It would seem to follow, and we so hold, that if the Legislature could, without violating either the State or Federal Constitutions, declare one to be a governmental function, it could, likewise, so declare the other.

██ ██ But it is suggested that the governmental immunity in the airport case was provided for in Chapter 116, Public Acts of 1933,—carried forward into Williams Annotated Code, Sec. 2726.22, and now into Sec. 42-310, T. C. A.,—whereas the governmental immunity involved in the instant case was provided for in an amendment to the Charter of the City of Memphis. We think this distinction is immaterial. Our Supreme Court has repeatedly held that the Legislature has complete and unrestricted control of municipal corporations in this State. See Luehrman v. Taxing District of Shelby County, 70 Tenn. 425; The Redistricting Cases (Grainger County v. State ex rel. Mynatt), 111 Tenn. 234, 80 S. W. 750; Williams v. Nashville, 89 Tenn. 487, 15 S. W. 364, and Smiddy v. City of Memphis, 140 Tenn. 97, 203 S. W. 512. Also, in Stocker v. City of Nashville, cited above, Mr. Justice Chambliss, speaking for the Supreme Court, quoted with approval from the New York case of Mac-Mullen v. City of Middletown, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A., N. S., 391, as follows:

"A municipal corporation is a political, or governmental, agency of the state, which has been constituted for the local government of the territorial division described and which exercises, by delegation a portion of the sovereign power for the public good. In its organization, and in the assignment of its powers and duties, the Legislature acts supremely. The power to grant, or to deny, a remedy by private action for the breach of a duty, imposed upon it for governmental purposes, * * * is not one which should be called in question." Stocker v. City of Nashville, 174 Tenn. 483, 488, 126 S. W. (2d) 339, 340, 124 A. L. R. 345.

In our opinion, the contention that the City of Memphis, in the instant case, is not entitled to governmental immunity provided for in Section 17 of Chapter 500, Private Acts of 1947, is wholly without merit, and appellant's first and third assignments of error are, accordingly, overruled.

Appellant's second assignment of error complains of the action of the trial judge "in setting aside plaintiff's amendments to his declaration so as to sue the contractor, its or their insurance carrier, and to surety on the contract, and in denying him leave to do so, because, under the terms and provisions of said contract, as therein set out, the said contractor was bound and obligated to carry liability insurance not only for the protection of the principal contractor and any subcontractors, but for the contractee, and the City of Memphis." Plaintiff's theory, on this aspect of the case, is that even though the City of Memphis was engaged in a governmental function and is, therefore, itself exempt from suit, nevertheless, if it carried public liability insurance, the coverage of such insurance would inure to the benefit of plaintiff. A line of decisions in Tennessee tends to support this contention to the extent that if the City of Memphis carries public liability insurance in connection with the performance of some governmental function, the carrier of such insurance might be liable to the extent of its coverage, even though the city itself, by reason of governmental immunity, would not be liable. See Travelers Insurance Co. v. Dudley, 180 Tenn. 191, 173 S. W. (2d) 142; Rogers v. Butler, 170 Tenn. 125, 92 S. W. (2d) 414; McLeod v. St. Thomas Hospital, 170 Tenn. 423, 95 S. W. (2d) 917; Taylor v. Cobble, 28 Tenn.

App. 167, 187 S. W. (2d) 648; Williams v. Town of Morristown, 32 Tenn. App. 274, 222 S. W. (2d) 607, and Wilson v. Maury County Board of Education, 42 Tenn. App. 315, 302 S. W. (2d) 502. As was said by Judge Hickerson of the Middle Section of the Court of Appeals, in Williams v. Town of Morristown [32 Tenn. App. 274, 222 S. W. (2d) 614]:

"The trend of these decisions is that a defendant and its insurance carrier are liable to the injured party, although the defendant would not be liable unless it carried the liability insurance. It would be an entirely useless gesture and waste of public funds for a municipality to carry liability insurance to protect it in tort actions incurred in connection with its governmental acts if it were required to plead and set up governmental immunity as a defense. The more equitable rule, sanctioned by reason and common sense, would be to permit the plaintiff to plead and prove that the defendant carried liability insurance; then limit the judgment to such coverage. That seems to us to be a reasonable extention of the rules already announced by our courts."

In the instant case, there is no allegation that the defendant, City of Memphis, carried any public liability insurance which would bring it within the rule quoted above. Plaintiff's contention on this point is that the contractor was obligated by contract to carry such insurance for the benefit of the City of Memphis, and that if this provision of the contract was not complied with, the contractor would become liable as the insurer. No authority is cited for this proposition, and we do not think that the rule quoted above should be extended to

include that situation. In our opinion, a proper construction of the contractual obligation of the contractor under this provision of the contract with the City of Memphis should limit its obligation to that of carrying insurance which would protect the City of Memphis from any recovery which could be had against it. It should not be construed to require the contractor to carry insurance for the purpose of protecting against a liability which does not exist. That would be equivalent to requiring the carrying of fire insurance on an absolutely fireproof building.

We think assignment of error number II is without merit, and same is, accordingly, overruled.

■■ There is another reason, not referred to in the briefs of either counsel for plaintiff or counsel for defendants in this case, which confirms us in the conclusions which we have reached, as stated above. So far as the record of this cause and the briefs of counsel for the respective parties thereto indicate, the President's Island Harbor and Port enterprise should be treated as exclusively a municipal project of the City of Memphis, for which only it, through its subordinate agencies, is responsible. Such, however, is not the case. The President's Island Harbor and Port project as is disclosed by the legislative Acts of 1947, is a joint project of the City of Memphis and Shelby County. Chapter 500, Private Acts of 1947 amends the Charter of the City of Memphis so as to establish and create a commission to be composed of five members, to be known as the Memphis and Shelby County Harbor and Port Commission. This Act is supplemented by Chapter 529, Private Acts of 1947, which authorizes cooperation of Shelby County with the City

of Memphis and provides for the ownership, operation, maintenance and development of a harbor and port in the County of Shelby and/or the City of Memphis. Certainly, we may take judicial notice of both of these Acts. The Harbor and Port Commission which is provided for in Chapter 500, Private Acts of 1947 and Chapter 529, Private Acts of 1947, by and through which Commission the project is to be carried out on behalf of both the City of Memphis and the County of Shelby, is composed of five members, three of whom are appointed on nomination of the Mayor of Memphis, and two of whom are elected by the Quarterly County Court of Shelby County. Section 16 of Chapter 529, Private Acts of 1947, is similar to Section 17 of Chapter 500, Private Acts of 1947, in that it declares the project to be a governmental function and prohibits suits against both the Harbor and Port Commission and Shelby County. In this situation, it seems to us that, even if plaintiff were entitled to recover in this cause, the members of the Harbor and Port Commission and Shelby County, as well as the City of Memphis should have been made parties to the suit, or, in any event, that Shelby County should have been made a party. It would, in our opinion, be inequitable to impose liability on the City of Memphis only, where its interests are inextricably mixed with those of Shelby County, another municipality. For this reason, as well as for the reasons stated above, we think the judgment of the lower court should be affirmed.

The costs of the appeal, as well as those of the lower court, will be adjudged against the appellant, James M. Thornton.

Avery, P. J. (W. S.), and Carney, J., concur.