**CITY OF MEMPHIS and Memphis Light, Gas and Water Division, Petitioners,**

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS UNION, LOCAL 1288, et al., Respondents.**

Supreme Court of Tennessee, Western Division.

Dec. 31, 1976.

Ross B. Clark, II, Frierson M. Graves, Jr., Memphis, for petitioners.

Lucius E. Burch, Jr., Burch, Porter & Johnson, Saul C. Belz, Burch, Porter & Johnson, Memphis, for respondents.

### OPINION

FONES, Justice.

This suit was brought by two employees[1] of the Memphis Light, Gas and Water Division seeking a declaratory judgment of the constitutionality of a Memphis Charter provision requiring all personnel solely employed by the City of Memphis to reside within the territorial limits of Shelby County.

The Chancellor held that the charter provision was constitutional and dismissed the suit. The Court of Appeals reversed, holding that the provision violated the equal protection clause of the Fourteenth Amendment to the United States Constitution and Section 8, Article 1 of the Tennessee Constitution, because the term "solely employed" was unreasonably discriminatory, and therefore did not reach the issue of validity of using the boundary lines of Shelby County as a residential requirement for the class solely employed by the City of Memphis.

Defendants, City of Memphis and Memphis Light, Gas and Water Division, assign two (2) errors to the Court of Appeals decision. They first maintain that the Court erred in finding the residential provision for those personnel employed solely by the City was an unreasonable and arbitrary exercise of class action. They contend that resort to certain Private Acts demonstrates the classification of "employees employed solely" by the City of Memphis is meant to distinguish those from ones employed jointly by Shelby County and the City. This distinction they argue is valid. They further cite as error the Court of Appeals' failure to reach and decide the issue of whether or not the territorial limits of Shelby County may by imposed as a residential requirement upon employees of the City of Memphis.

The questioned provision reads as follows:

"190. *Residence requirements of persons employed solely by city.*—Hereafter all persons employed solely by the City of Memphis or any of its departments, bureaus or commissions, shall be required to live and maintain a residence within the boundaries of the county of Shelby, as now defined or as may be hereafter defined, except that the board of commissioners of the City of Memphis may exempt therefrom employees of any division, department or bureau whose duties as employees of such departments, bureaus or commissions require them to perform services for the city outside the territorial limits thereof."

A residential requirement for City employees was first made part of the Charter of the City of Memphis by an amendment to the Charter passed in Chapter 44 of the Private Acts of 1941. The 1941 provision required employees to live within the city limits. The present provision amended Chapter 44 of the Private Acts of 1941 to extend the permissible residency of employees to Shelby County. Chapter 248, Private Acts, 1963.

Both plaintiffs reside outside the territorial limits of Shelby County. At trial they

---

1. This case was originally brought as a class action as well as on behalf of the two named plaintiffs. The Chancellor dismissed the class action aspect because the notice requirements of Rule 23, T.R.C.P. had not been complied with.

presented proof to demonstrate that they were as loyal, efficient and available for emergencies as employees living within Shelby County. Plaintiffs presented no proof that employees not solely employed by the City, i. e. those having any second employer, were not required to live within Shelby County. This contention was first made before the Court of Appeals.

Defendants' proof at trial consisted of testimony concerning reasons for requiring employees to live within Shelby County. Mr. Richard Barnes, the City's Personnel Director testified that the residential requirements would assure availability, contribute financially to the community and instill pride. Defendants did not present evidence on the issue of personnel solely employed by the City vis a vis those employed by the City and another employer having to maintain a residence within the County. However, Mr. Barnes did testify that the requirement was uniformly applied to all individuals employed by the City.

I

The holding of the Court of Appeals necessarily contemplates that there are only two (2) classes of employees of the City of Memphis, relevant to the issue here, those who are employed solely by the City and those who work for the City and also are employed by *any* other employer. Defendants' position contemplates that the only purpose and intent of the use of the word "solely" was to distinguish joint employees of the City and County from those employed only by the City, and further that it was done to avoid conflict with a provision in the Private Acts of 1933, Chapter 413, Section 4, authorizing Shelby County and all municipalities within Shelby County to perform the functions of joint city-county agencies by and through employees, without the necessity of said employees' residency within the corporate limits of the municipality. Further implicit in defendants' position is the total lack of concern or intent to, in any way, deal with employees who may have a second employer, other than Shelby County. Such a concern would obviously be addressed in an entirely different manner, either expressly prohibiting same or prescribing restrictions thereon. In short, there is no reasonable relationship, as a practical or a legal consideration, between any aspect of the broad problem of other employment by employees of the City and a territorial restriction on residence.

If we may properly consider defendants' interpretation of the Act it is apparent that there are two classes of employees not solely employed by the City: (1) those jointly employed by City-County agencies and (2) those holding a second employment unrelated to the County.

Plaintiff insists that since the record contains no factual evidence that Memphis and Shelby County have joint employees and that the argument based thereon is raised for the first time in this Court that we are precluded from giving it consideration. From our examination of the record it appears that in the trial court both parties confined their attention to the validity of the use of Shelby County as a proper residential boundary. The Chancellor upheld the constitutionality of the Act without discussion of the issues. The Court of Appeals having predicated its decision entirely upon its construction of the language of the act, "solely employed," it would be manifestly unjust to preclude defendants from taking issue with that ruling on any grounds which the rules of procedural and substantive law permit. Also, we have repeatedly held that it is incumbent upon the Courts to apply the controlling law, whether or not cited or relied upon by either party. *State v. Collins*, 528 S.W.2d 814 (Tenn.1975); *Simmons v. State ex rel. Smith*, 503 S.W.2d 103 (Tenn.1973); cf. *Smith v. Norris*, 218 Tenn. 329, 403 S.W.2d 307 (1966).

Before we consider the position of defendants on its merits we must determine the propriety of taking judicial notice of the private acts of the legislature and of assuming the existence of a class of employees working for joint agencies of Memphis and Shelby County.

This Court can and has taken judicial notice of private acts of the legislature dealing with City or County matters. *State v. City of Nashville*, 208 Tenn. 290, 345 S.W.2d 874 (1961); *Kyle et al. v. Marcom*, 181 Tenn. 57, 178 S.W.2d 618 (1943). In *Thorton v. Carrier*, 43 Tenn.App. 615, 311 S.W.2d 208 (1957), the Court of Appeals took judicial notice of Chapter 500, Private Acts of 1947, which established a commission known as the Memphis and Shelby County Harbor and Port Commission.

We conclude that we may take judicial notice of the private acts of the legislature that authorize joint city-county agencies in Shelby County.

Private Acts of 1933, Chapter 413, provides, in part:

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That Shelby County and/or all municipal corporations and/or other local governmental agencies located in said County be, and are hereby authorized and empowered to consolidate or operate jointly any or all governmental or corporate activities or functions of said County and/or municipal corporations and/or other local governmental agencies located therein which may now or hereafter be authorized to operate or conduct, which may be conveniently or advantageously consolidated or operated jointly.

. . .

Sec. 4. *Be it further enacted,* That any and all contracts authorized by the provisions of this Act may be executed in such form and with such provisions, conditions and limitations, and for such considerations, as may be acceptable to the contracting parties; and it is hereby expressly provided that any such contracts may authorize the carrying on within the corporate limits of any such municipal corporation of any governmental or corporate activity or function provided for under the terms of any such contract by or through any agents, employees or other character of agency therein agreed on, whether or not they reside within the corporate limits of such municipal corporation."

Chapter 421 of the Private Acts of 1917 was an amendment to the Charter of the City of Memphis creating a joint commission to oversee the maintenance and operation of an auditorium and public market place.

Defendants' brief lists an additional six joint agencies said to have been established pursuant to the authority of the 1933 Act. We cannot take judicial notice of the establishment of these agencies.

■ However, this Court has expressly held that when a constitutional attack is made upon a police power classification, as contravening Article 1, Section 8 and Article 11, Section 8, Constitution of Tennessee and the Fourteenth Amendment, Section 1 to the Federal Constitution, any state of facts that can be reasonably conceived that would sustain the legislation will be assumed to have existed when the law was enacted. *Arutanoff v. Metropolitan Government*, 223 Tenn. 535, 448 S.W.2d 408 (1969); *Motlow v. State*, 125 Tenn. 547, 145 S.W. 177 (1911). The rule is equally applicable to the classification under constitutional attack in this case. The United States Supreme Court invoked the same rule in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970):

" 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' (citation omitted) 'A statutory discrimination will not be set aside *if any state of facts reasonably may be conceived to justify it.*' " (Emphasis added). 397 U.S. at 485, 90 S.Ct. at 1161.

■ Since the 1917 Act created a joint agency and the 1933 Act authorized the

creation of others, we are of the opinion that we may reasonably assume that Shelby County and Memphis have persons jointly employed in the operation of joint agencies, and that the intent of the legislature in using the word "solely" was to distinguish joint employees of Memphis and Shelby County from those solely employed by the City.

■ Any residential restrictions of joint employees of Shelby County and Memphis would be subject to the 1933 Act and the express terms thereof would be covered in the contract between the City and County creating the particular joint agency. It follows that in an act amending the Charter of the City of Memphis, on the subject of residential requirements for city employees, it was appropriate to exclude joint City-County employees, and that exclusion has a rational basis, that is constitutionally sound.

## II

■ The United States Supreme Court has created a two tier system for evaluating classifications by state legislatures. If the classifications do not interfere with the exercise of a fundamental right or operate to the peculiar disadvantage of suspect classes there must simply be a rational basis for the legislation. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). However, if it would infringe on a fundamental right

or class then the classification must withstand strict scrutiny. *Ibid.* The question of bona fide residential requirements for governmental personnel falls within the rational basis category. *McCarthy v. Philadelphia Civil Serv. Comm.*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976); [2] *Massachusetts Bd. of Retirement v. Murgia, supra.*

In *McCarthy*, the Court was dealing with a Philadelphia ordinance which required employees to live within the city limits. The employees' contention was that the ordinance interfered with the "fundamental right to travel interstate" as defined in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1960); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). The Court pointed out that every one of those cited cases involved requirement of residence for at least one year before obtaining fundamental rights. They quickly contrasted the right to vote (*Dunn*) and receive welfare benefits (*Shapiro* and *Memorial Hospital*) with a "constitutional right to be employed by the city of Philadelphia *while* . . . living elsewhere." 424 U.S. at 646, 96 S.Ct. at 1155. The Court found no support for such a constitutional right. *Id.* Furthermore, in *Murgia* the Supreme Court pointed out, "This Court's decisions give no support to the proposition that a right of governmental employment *per se* is fundamental."

**2.** *McCarthy* was a per curiam decision by the Court affirming the decision by the Commonwealth Court of Pennsylvania. 19 Pa.Cmwlth. 383, 339 A.2d 634 (1975). The Pennsylvania Court's decision to uphold the Philadelphia residency requirement was based to a great extent on an opinion by the United States Fifth Circuit Court of Appeals, *Wright v. City of Jackson, Mississippi*, 506 F.2d 900 (1975). In the *Wright* case the Court first held that city employee residential classifications were to be measured by the rational basis test and then set forth the following rational purposes for such requirements:

". . . the promotion of ethnic balance in the community; reduction in high unemployment rates of inner-city minority groups; improvement of relations between such groups and city employees; enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries." 506 F.2d at 903, 904 [Citing *Ector v. City of Torrance*, 10 Cal.3d 129, 109 Cal.Rptr. 849, at 852, 514 P.2d 433 at 436 (1973)].

427 U.S. at 313, 96 S.Ct. at 2566, 49 L.Ed. 2d at 524.

 We find that the charter provision which requires residence within Shelby County for employees of the City of Memphis is valid and constitutional under the Fourteenth Amendment and Article 11, Section 8. A county residential requirement insures proximity to employee's job in emergencies. County taxes and other revenues are shared by both the County and the City of Memphis and the City reaps general economic benefits flowing from local expenditure of County resident's salaries. Furthermore, pride in one's place of employment and a feeling of greater personal stake in the city's progress can be expected from employees residing in the county wherein the city lies than from those who reside beyond the limits of the county.

Plaintiffs argue that they are as close to their jobs across county and state lines as some employees living within the county. Although that may be true, the City is allowed some leeway in devising reasonable residential requirements. The mere fact that in 1963 the residential boundaries were extended from the City of Memphis to Shelby County demonstrates an attempt to accommodate employees. As the Supreme Court noted in *Murgia, supra* :

> ". . . the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. (citation omitted) Such action by a legislature is presumed to be valid." 427 U.S. at 314, 96 S.Ct. at 2567, 49 L.Ed.2d at 525.

We find a rational basis for the City of Memphis requiring its employees to live within the boundaries of Shelby County. Chapter 248, Private Acts of 1963 is a constitutional enactment and excludes no employees of the City of Memphis, except those employed jointly with Shelby County.

The judgment of the Court of Appeals is reversed. In consideration of the lack of quality draftsmanship of the Act in question and other equitable considerations, the costs are assessed against the City of Memphis.

COOPER, C. J., and HENRY, BROCK and HARBISON, JJ., concur.