HANNAH L. JOHNSON, Appellee, v. CITY OF JACK-
SON, Appellant.—302 S. W. (2d) 355.

Western Section.    June 21, 1956.

Petition for Certiorari denied by Supreme Court September 3, 1956.

Russell Rice, Jackson, for appellant.

Z. Alexander Looby, Avon N. Williams, Jr., Nashville, Martin Exum, Jackson, for appellee.

CARNEY, J.   The City of Jackson appeals from a decree of the Chancery Court awarding the complainant below, Hannah L. Johnson, a judgment of $1,550.   The complainant, Hannah L. Johnson, brought suit for the amount of her salary for the school year 1950-1951 alleging that she had been reelected as a teacher for the 1950-1951 school year and that she was prevented from serving as such teacher through the unlawful acts of the defendant and its officials and through no fault of her own.

The Chancellor made no finding of fact in the cause except in the final decree and which decree being short we copy in full as follows:

"This cause came on to be heard this 19th day of October, 1955, before the Honorable Dewitt Henderson, Chancellor, Etc. Upon the entire record, the depositions and stipulation heretofore filed in this cause, and upon the additional deposition of the complainant, Hannah L. Johnson, taken in open court by agreement of counsel for both parties, from all of which the Court finds and holds that the complainant was legally employed under contract as a teacher in the City Schools of Jackson, Tennessee for the school year 1950-1951, and that the complainant was ready, willing and able, to perform said contract, but was wrongfully prevented from doing so by defendant's agents or servants, acting in their official capacities as said agents or servants.

"The Court further finds that the complainant was entitled to her contractual salary of $225.00 per month for a period of ten months during said contract period, and that the complainant is entitled to damages in the sum of $1,550.00, being the amount of her unpaid salary for said contract period, less the sum of $700.00 which the Court finds that she has earned from other employment during said contract period.

"It is therefore, ordered, adjudged and decreed that the complainant have and recover from the defendant the sum of $1,550.00, together with the costs of this cause, for all of which let execution issue.

"To the foregoing action of the Court, the defendant excepts, and prays an appeal to the next term of the Court of Appeals at Jackson which appeal is

hereby granted and the defendant is allowed thirty (30) days within which to perfect its appeal.

> "/s/ Dewitt Henderson
> "Chancellor.

"/s/ Z. Alexander Looby
"/s/ Avon H. Williams, Jr.
"/s/ Martin Exum
>    "Solicitors for Complainant
"/s/ Russell Rice
>    "Solicitor for Defendant"

The complainant, Hannah L. Johnson, was 34 years old at the time of the trial in 1955 and she had been employed as a teacher in one of the colored elementary schools of Jackson, Tennessee, beginning in 1943 and she taught through the school year 1949-1950.

On at least two occasions the teacher, Hannah L. Johnson, had been admonished by the principal of the school and also the City Superintendent of Schools about punishing or chastising students too severely. The city officials considered dismissing or at least not re-electing the complainant for the new school year but then decided to put her on probation with the understanding that if the practice of abusing the children by too severe punishment continued or occurred again she could not teach in the city schools. These admonishments to the complainant about her conduct were all oral.

On or about April 14, 1950, the complainant, Hannah L. Johnson, received through the mail the regular form letter sent out by the Superintendent of Schools to all teachers who had been re-elected notifying them that they had been re-elected and which letter is as follows:

"Dear

"Today I presented to the City Commission a list of teachers for the 1950 Session. Your name was in the list.

"This letter is a notification that the City Commission, upon my recommendation, elected you to a position in the City schools for the year 1950-51.

"If there is any reason why you cannot accept this election and plan to teach through the whole year 1950-51, I would appreciate your notifying me at once about any inability to accept the position.

"Your contract will be mailed to you as early as we can finish up the business for the year 1949-50 and have the School Budget for 1950-51 adopted.

"In accepting a position in the City Schools, we are charged with a responsibility of serving the welfare of the children of the City of Jackson. I hope your thinking, your attitude and your actions now and for next year will be in accordance with an ethical and a professional standard that will make you happy and have this same attitude reflected in the happiness and welfare of the children under your tutelage. I feel this responsibility very keenly and I shall be happy if all the teachers in the System feel the same way.

"Sincerely yours,
"/s/ D. E. Ray
"D. E. Ray, Superintendent
"Jackson City Schools"

Sometime in May, 1950, after complainant had received the letter notifying her of her re-election, one of her pupils, a little girl, received an injury to her eye when

struck by a little boy whom the complainant had told to strike the little girl back. It seems that one of the little boys reported to the complainant that the little girl had struck him and the complainant said "she hit you, you hit her back." Evidently the little boy took her too literally and struck the little girl a much stronger blow than the complainant intended for him to strike her.

At any rate, the little girl's mother became aroused and reported the incident to the principal and in turn the news came to the attention of the city officials and they decided that she should not teach the following year. Accordingly, on June 7, 1950, which was after the close of the school year they notified the complainant of the termination of her employment by letter which is as follows:

"City of Jackson, Tennessee
Commission Government

"June 7, 1950

"Department of Education
D. E. Ray, Superintendent
"Miss Hannah L. Johnson
"110 Laconte Street
"Jackson, Tennessee

"Dear Miss Johnson:

"Mr. Chester L. Parham, Commissioner of Education, has instructed me to write you that your connection with the City School System is terminated as of today for

reasons that you are familar with. Your deposit in the Retirement Fund will be mailed to you at once.

> "Respectfully,
> "/s/ D. E. Ray
>   "D. E. Ray, Superintendent
>   Jackson City Schools
> "jc"

The complainant, Hannah L. Johnson, in the first part of her original deposition testified that she was not familiar with any reasons why they should terminate the contract and that it was never explained to her. (Record p. 19.)

However, the proof shows clearly to the contrary that the complainant knew that she was going to be fired before she received the letter because later in her testimony she states that the principal of the school, Professor Meriwether, called her to his office and told her " 'Miss Johnson, they are about to fire you; they did not tell me to tell you, yet—Be like the hound and get in front of the wolf. If they fire you, you will not be able to get another school, and if you will resign, then after a year or two come back and I will help you get another—I will help you get a position.' I asked what was happening, what was it, he said 'about this child', I said, 'well, I don't feel that it was all my fault, * * * I didn't feel like that, it was not done as a personal grudge, I felt that that that was the best solution at that time.' " (Tr. p. 76)

We think the preponderance of the proof is that the complainant also talked to the Superintendent of Schools before she received the notice of dismissing her.

Sometime after she received the notice the complainant

and her father and a delegation of friends called upon the then Commissioner of Education of the City of Jackson, Mr. Chester Parham, and asked for a reconsideration of complainant's case and that she be rehired.

There was no formal hearing before Commissioner Parham or the entire City Commission but the evidence shows clearly that there was no question in the complainant's mind as to the charges against her. There is nothing in the record to show that she denied that the little girl was struck in the eye as above set out. Likewise, she practically admits the two occurrences upon which she chastised the students too severely. One, a boy who was required to take off his shirt and was whipped on his bare back so that it raised welts and the other, a little girl who was paddled in the hand so severely that the hand became sore and had to be lanced by a doctor. Both of these occasions occurred prior to the time of her notice of re-election and was a subect of discussion between her, the principal, the Superintendent of Schools and Mr. Parham resulting in the oral notice to her that she was on probation.

All the discussions before Commissioner Parham were oral both before and after the letter of dismissal was sent to the complainant. The request for reinstatement or reconsideration in behalf of the complainant was futile and to no avail.

The complainant testifies that Commissioner Parham promised her a full hearing before the City Commission but that she was never able to get a definite day to be heard. Commissioner Parham testified that no application for a hearing before the City Commission was made by the complainant but that the matter was discussed

with the complainant both in the office of the Superintendent of Education and in his office before and after the letter of dismissal of June 8, 1950, was sent. We think the preponderance of the evidence supports Commissioner Parham's statement of the case and we find that the complainant never made an application for a hearing before the City Commission.

It is our opinion from a study of the record that the complainant gave up the idea of pursuing any further effort for reinstatement after the mission of the complainant and her delegation before Commissioner Parham was unfruitful. Complainant made no further effort to teach in the city schools and did not appear at the opening of the fall term of school or any time thereafter.

The complainant was unable to get a job as a teacher and went to Chicago where she obtained work in a laundry. She filed her bill in this cause on September 5, 1952, alleging that she had been elected for the year 1950-51 and that Mr. Ray, the Superintendent of City Schools, had no authority to terminate her contract.

The defendant, City of Jackson, contended first, that the complainant had no contract to teach for the year 1951 and second, that even if she did have a contract, then the complainant was properly and legally discharged because her conduct was such as to make it unsafe and improper for elementary school children to be under her care.

There is a difference between discharging a teacher and simply failing to re-elect him or her. In our opinion the effect of the letter of the Superintendent of Schools of date April 14, 1950, was to give the complainant a right to teach for the school year 1950-1951. The

complainant's acceptance of the offer was implied from the very terms of the letter which required action on the part of the complainant only in the event she did not plan to teach for the new year. The actual signing of a written contract was to be incidental and deferred to some future and indefinite date and her right to teach was not made dependent or conditional upon the actual execution of a written contract between the City of Jackson and the complainant. Hence, we hold that the complainant was re-elected and the question presented by this appeal is whether or not she was legally discharged.

When the General Education Bill of 1925 was enacted, Code 1932, sec. 2306 et seq., city schools were expressly exempted from the provisions thereof as shown by sec. 2394 of the 1932 Code of Tennessee which is as follows:

*"City schools may be continued; transfer of children between city and county.*—Cities and incorporated towns operating systems of public schools under provisions of their respective charters and levying an additional elementary school tax for operating expenses other than for grounds, buildings, and equipment are empowdered to continue the operation of said system of public schools under the provisions of their respective charters; provided, that no transfer of children between city and county schools shall be made except by agreement between the respective boards of education."

The City of Jackson operates the city school system under the authority of Chapter 168 of the Private Acts of Tennessee of 1915.

Sec. 14 provides—"It shall have and possess, and it and its members shall, subject to the provisions of this

Act, exercise from and after the election and qualification, all Executive, Administrative, Legislative and Judicial powers now had * * by the * * * Board of Public School Commissioners * * *.''

Sec. 17 provides, ''That the Commissioner of Health, Education, Part and Public property shall have charge of maintaining an adequate and sufficient system of public schools in the City of Jackson and shall construct and maintain proper buildings to be used by the public schools of the City of Jackson, subject to the control and supervision of the Board of Commissioners. * * *''

Sec. 22 expressly provides for the discharge of an employee by the Commissioner in charge of the department concerned, to wit:

''Sec. 22. Be It Further Enacted, That all officers, and employees of each department shall be under the control and supervision of the Commissioner of that department subject to the ultimate control of the Board of Commissioners. For any reason satisfactory to himself, a Commissioner of any department is hereby empowered to suspend, remove, or discharge any subordinate officer or employee in his department, provided that any officer or employee shall have the right within three days from the time of such ruling to appeal from the same to the Board of Commissioners, who shall hear the same at their first regular meeting after such appeal is taken and may affirm or reverse such Commissioner. If the ruling of the Commissioner be reversed, said officer or employee shall at once be reinstated in his office or employment; provided further, that the party so suspended, removed or discharged, shall have no claim

against the City for the last time by reason of such ruling on the part of the Commissioner.''

Sec. 38 reiterates the authority of the Board of Commissioners of the City of Jackson in connection with the schools, to wit:

"Sec. 38. Be It Further Enacted, That all the right, title and interest in and to the public schools which is now vested in the board of education of the City of Jackson, be and the same is divested out of them and vested in the said Board of Commissioners, and the control and management of the public schools of the City shall be under the said Board of Commissioners. The superintendent of public schools to be elected by said Board of Commissioners, shall also serve as principal of the High School without extra remuneration. The said Board of Commissioners shall elect all officials, teachers and employees of the public schools of the city and fix their salaries or compensation but it shall be the duty of the Superintendent of public schools to recommend for election or appointment teachers, and other school officials and employees.''

It is contended by the complainant that the City of Jackson does not come within the exception to the General Education Bill of 1925 set out in Code sec. 2394 above because the record does not show that the City is levying an additional elementary school tax for operating expenses as set out in said sec. 2394.

Chapter 407 of the Private Acts of 1909 which is one of the Private Acts constituting the charter of the City of Jackson provides as follows:

"Sec. 27. Be It Further Enacted, That the Legislative Council of said city shall each year levy a school tax necessary to support and maintain the public schools of said city, said tax, however, not to exceed one-half (½) per centum of the assessed value of the taxable property within the city limits."

The complainant insists that the record does not show any compliance on the part of the City of Jackson with this law relating to the assessment of a tax.

■ A municipal charter is a public law which the court will judicially notice and it need not be specially pleaded nor given in evidence on trial. East Tennessee, V. & G. R. Co. v. City of Morristown, Tenn. Ch. App., 35 S. W. 771.

■ In the absence of proof to the contrary, it will be presumed that the officers of the City of Jackson levied and collected the tax required under the provisions of chapter 407 of the Private Acts of 1909. Cox v. City of Bristol, 183 Tenn. 82, 191 S. W. (2d) 160; State ex rel. Biggs v. Barclay, 188 Tenn. 26, 216 S. W. (2d) 711. Other cases cited in Vol. 9 of West's Tenn. Digest, Evidence, 83, p. 519.

The case of State ex rel. Smith v. City of Chattanooga, 176 Tenn. 642, 144 S. W. (2d) 1096, relied upon by complainant is not controlling because in the Smith case the Court made no mention of an act of the legislature making mandatory that the city levy a special tax to maintain the public schools as in the case at bar.

Therefore, we hold that the City of Jackson did come within the exception to the General Education Act of 1925 and the question presented on this appeal is whether

or not the complainant was legally discharged under the authority of sec. 22 of chapter 168 of the Private Acts of 1915 copied above.

This case is similar in some respects to the case of Hayslip v. Bondurant, 194 Tenn. 175, 250 S. W. (2d) 63. The schools of Memphis were operated by the Memphis Board of Education under and by virtue of a private act of the legislature just as were the schools of the City of Jackson in the instant case. In the Hayslip case the Supreme Court of Tennessee upheld the action of the Memphis Board of Education in discharging Mrs. Hayslip during a school year on the grounds that she made public false charges that boys and girls attending a certain public school in Memphis had organized into a club for sex immorality.

██ In the case at bar it appears to us that the Commissioner of Public Education of the City of Jackson after conference with the Superintendent of Schools determined that the complainant, Hannah Johnson, should not be retained as a school teacher any further because of the mistreatment of students and the accompanying unfavorable publicity therefrom and therefore, he discharged her as he had a right to do under sec. 22 of chapter 168 quoted above.

It appears further that the complainant, after having been legally discharged, failed to avail herself of her right of appeal to the board of Commissioners within the three-day period set out in said sec. 22 but instead chose to petition for a rehearing before the Commissioner of Education, Mr. Parham, who refused to rescind his action. Having failed to appeal to the Board of Commissioners either within three days after her dismissal or

within three days after her request for reinstatement by Commissioner Parham was denied, she lost her right to appeal to the City Commission for further hearing and her discharge became final.

■ The complainant contends that under the terms and provisions of the continuing contract section of the Code Supplement of 1950 sec. 2340.1 the complainant could not be fired after thirty days before the close of any school term.

1950 Code Supplement, sec. 2340.1 is as follows:

"2340.1 *Teachers to continue in service unless furnished proper notice of dismissal or failure of reelection.*—Teachers in service and under control of the public elementary and high schools of Tennessee shall continue in such service until they have received written notice, from their board of education, of their dismissal or failure of reelection at least thirty days prior to the close of the school term; provided the board of education may transfer any teacher from one position to another at its option; provided that nothing contained in this section shall affect any rights that may have accrued, or may hereafter accrue, in behalf of any teachers or principals in any county under any law providing a tenure of office for said teachers and principals. (1943, ch. 1, sec. 19; 1943, ch. 147, sec. 1.)"

It is stipulated that the school term of 1949-1950 closed on May 22, 1950, and the record shows that the complainant received her notice of dismissal on June 8, 1950.

However, we respectfully disagree with complainant's counsel as to the effect of said Code Section. We can find nothing in said Code Section to indicate that the legislature intended that a teacher could not be fired or discharged at any time for good cause. Therefore, we hold that said section has no application to the case at bar.

The complainant contends that she was dismissed without notice and without cause and given no opportunity for her defense. She relies primarily upon the cases of Morley v. Power, 73 Tenn. 691; Id., 78 Tenn. 219, and Butcher v. Charles, 95 Tenn. 532, 32 S. W. 631. Those cases do enunciate the rule that a teacher under contract has a right to be notified of the charges made against him and the right to be heard in his own defense.

Substantially the same protection for teachers was enacted in the General Education Act of 1925, 1932 Code sec. 2325 which is as follows:

"2325. Further duties of county board of education:—* * *

"(10) To dismiss teachers, principals, supervisors, and other employees upon sufficient proof of improper conduct, inefficient service or neglect of duty, provided, that no one shall be dismissed without first having been given in writing due notice of the charge or charges and an opportunity for defense."

If we assume that the City of Jackson was bound by the provisions of the General Education Act of 1925 as insisted by the complainant, then we are still of the opinion that the complainant is not entitled to prevail in this cause. The complainant was given written notice of

her discharge and while the grounds of her dismissal were not spelled out such letter was adequate to notify the complainant fully of such charges by reference. She was already fully familiar with the fact that she was on thin ground and she had discussed the most recent incident of the child, Barbara Cobb, being struck in the eye with the Superintendent of Schools and the Commissioner of Education. Professor Meriwether had already told her she was going to be discharged and the reasons therefor. We can see no prejudice to the complainant for the failure of the letter to expressly refer to names and dates when the complainant was already thoroughly familiar with the particular incident and the complainant substantially admitted all of the facts leading up to the little girl's injury.

██ Also we observe that while the letter did not expressly state that the complainant was entitled to defend herself against said charges yet we see no prejudice accruing to her because she admitted all of the charges except the conclusion as to her unfitness to teach and also the record shows that she took advantage of her opportunity to defend herself by appearing in person and also having a delegation of interested persons including her father appear before the Superintendent and the Commissioner of Education. She had a hearing before these officials and was unsuccessful. Evidently she was convinced that further appeals to the City Commission would be futile and to no avail and therefore, she dropped her defense and acquiesced in the notice of dismissal. As we observed above she made no further attempts to keep her job and did not appear at the opening of school and seek to be permitted to teach. Another person was employed in her place and she sought other work.

There is no suggestion in the entire record that the school officials of the City of Jackson acted in any manner arbitrarily or unfairly toward the complainant or that they were motivated by anything other than a desire to protect the welfare of the school children and that they discharged the complainant for the reason that they thought that she was incompetent and inefficient and not a proper person to have the care and custody of the school children.

We think the city officials not only had a right to discharge the complainant but since they believed on reasonable cause that she was not a proper person to teach, they were under a duty as public officials to discharge her.

In view of the action which we have taken above it becomes unnecessary and improper for us to consider the assignment of error of the complainant to the effect that the Chancellor erred in mitigating the complainant's judgment by the amount of money she earned by working in Chicago.

Defendant's assignments of error 2, 4 and 5 are sustained and the decree of the lower court will be respectfully reversed and judgment entered in favor of the defendant, City of Jackson. The complainant will be taxed with the costs of the appeal and also the costs of the cause below. Decree accordingly.

Avery, P.J. (Western Section), and Bejach, J., concur.