STATE ex rel. MRS. EGBERT SCHMITTOU, Complainant-Relator,

*v.*

CITY OF NASHVILLE et al., Respondent.

STATE ex rel. ERNEST W. COLBERT, Complainant-Relator,

*v.*

CITY OF NASHVILLE et al., Respondent.

(*Nashville,* December Term, 1960.)

Opinion filed March 10, 1961.

Hooker, Keeble, Dodson & Harris, Nashville, for Mrs. Schmittou.

JOHN CABLER CORBITT, Nashville, for Ernest W. Colbert.

ROBERT H. JENNINGS, JR., City Attorney, CARMACK COCHRAN, Special Counsel, Nashville, for city of Nashville.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

These two suits, along with others, were filed to contest the validity of Annexation Ordinance No. 60-94 of the City of Nashville. The two above named persons are the only ones involved in this appeal. A demurrer was filed in each of the above cases. For the sake of clarity, we will dispose of the Schmittou case first.

The demurrer in this Schmittou case was sustained by the Chancellor and upon appeal counsel for Mrs. Schmittou states that the only questions presented here are: (1) was the ordinance in question legally adopted over the veto of the Mayor of the City of Nashville, (2) does the original bill contain sufficient allegations to permit the introduction of proof to show that the annexation ordi-

nance in question is unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and the citizens and property owners of the municipality.

■ With reference to the first question, said ordinance was passed on third reading on April 26, 1960, was vetoed and returned by the Mayor on April 27, 1960, and thereafter was passed over the Mayor's veto at a special meeting held April 29, 1960. The next regular meeting after the veto would have been May 3, 1960. No question is raised as to the regularity of the calling of the special meeting for the purpose of acting on the ordinance or for the purpose of acting on the question of the passage over the Mayor's veto.

It is insisted by appellant that the City Charter did not authorize the passage of the Mayor's veto at this special meeting but that same could only be done at the next regular meeting; on the theory that the following provision of the City Charter should be so interpreted:

"* * * It shall be the duty of the Mayor carefully to examine all resolutions and ordinances passed by the City Council and if the Mayor approves any resolution and ordinance the same shall be signed by the Mayor. Should either or any of them not meet with the Mayor's approval, such *shall* be returned to the next *regular* meeting of the City Council, with the Mayor's objection in writing. * * *" (Emphasis added.) Sec. 14, Art. VI of the charter.

The Chancellor held in effect that this language when construed with Art. X, Sec. 29 means that the Mayor has until the next regular meeting to either approve or disapprove said ordinance or resolution and is thus a limita-

tion upon the power of the Mayor, but not upon the power of the Council. Whereas it is insisted by appellant that the Mayor had no power or right to return the matter until the next regular meeting and that, therefore, any action by the Council on same before that time was void.

Now Art. X, Sec. 29 provides in part as follows:

"Special meetings of the Council may be called by the Mayor whenever in his judgment the good of the City requires it, and it shall be his duty to call a special meeting whenever requested in writing by a majority of the members of the Council. * * *"

When it is considered that Art. VI relates to the powers, duties and responsibilities of the Mayor and that Art. X, Sec. 29 relates to the legislative body, it seems rather clear that this assignment must be overruled. The realities of life normally require that the Mayor or any other executive charged with a duty of approving or disapproving legislative matters must have a reasonable time in which to act upon same, and conversely, must be limited as to the time which will be allowed him—to avoid unnecessary delay. Said Sec. 14 in fact further provides that if the Mayor fails to return a resolution or ordinance at the first regular meeting after its passage, the same shall be deemed to have been approved by him and shall become effective without further action.

In *Johnson City v. Tennessee Eastern Electric Co.,* 133 Tenn. 632, 644-645, 652-653, 182 S.W. 587, 590, 592, the Court said:

"The intent of the framers of the Constitution was that the Governor should have 5 days' time within

which to consider the bill and to determine whether he would approve and sign the bill, or refuse to sign it, and return it with his objections to the house in which it originated. * * *

"So far as we have any judicial knowledge of any practical construction of section 18 of article 3 in this state, in respect of the return of bills when disapproved by the Governor, it has been that such return could be made to the *clerk* of the house in which the bill originated during a temporary adjournment of that house, or a joint temporary adjournment of both houses." (Emphasis supplied.)

We must assume, therefore, that when the Mayor called this special meeting, he did so because he thought that the good of the city required it, as stated in Art. X, Sec. 29, supra.

This assignment is accordingly overruled.

Referring to the second question, the Chancellor relying upon our recent opinion in *Morton v. Johnson City,* 206 Tenn. 411, 333 S.W.2d 924, said:

"This Court is of the opinion that the averments of the bills alone present a fairly debatable question. In view of the *Morton v. Johnson City* case (supra) it would seem a waste of time, effort and money on all parties to require the city to file an answer, for the city in denying the allegations alone would then present a debatable question and the Morton case would apply."

■ It is insisted in behalf of appellant that a demurrer admits all matters well pleaded as well as all reasonable, legitimate and natural inferences to be drawn from the bill; that a demurrer admits all allegations of a chal-

lenged pleading, and generally is not favored and will be overruled if, by any fair and reasonable intendment, the pleading challenged states, however inartificially, a good case.

There is no question about the correctness of the foregoing fundamental rules when properly applied. The particular insistence here by the appellant is that a simple joinder of issue on pleadings does not present a debatable question on the reasonableness of an ordinance; a debatable question is presented only after evidence is introduced on an issue upon which reasonable minds might differ. *Morton v. Johnson City*, supra; and *State ex rel. Southerland v. Town of Greeneville*, 201 Tenn. 133, 297 S.W.2d 68.

On the other hand, it is the position of the City of Nashville, appellee, that the averments of the original bill as amended taken together with those matters of common knowledge and of public record, which the Court will judicially notice, create a debatable issue as to the unreasonableness of Ordinance No. 60-94.

◼ The efficacy of this last statement in the present context depends upon whether this Court can take judicial notice of a certain printed report consisting of 201 pages, which came into being in the following manner. Ch. 241, Private Acts of 1951, created the Community Services Commission for Davidson County and the City of Nashville; Chs. 225 and 226 of the Private Acts for the same year, authorized respectively the County Court of Davidson County and the City Council of the City of Nashville each to appropriate public funds not to exceed $35,000 to be expended by the Community Services Commission, supra, for the purpose of making the survey of

the City of Nashville and Davidson County which is popularly referred to in the local newspapers as creating a single metropolitan district. There is no question that we may take judicial notice of these Private Acts of the Legislature. *Thornton v. Carrier,* 43 Tenn.App. 615, 311 S. W.2d 208, 216.

■ Also it is established that we may take judicial notice of the municipal charter of Nashville, which is a public law. *Johnson v. City of Jackson,* 42 Tenn.App. 296 309, 302 S.W.2d 355.

■■ It is also well established that ordinarily our courts will not take judicial notice of the ordinances or by-laws of a corporate town because they are private laws and are admissible in evidence only upon proof that they are laws of the corporation. Where, however, as in the present suit the bill in equity refers to and incorporates a city ordinance and map as exhibits to the original bill, there is no need to take judicial notice of same and they are proper for consideration on testing a bill by demurrer. *Brimer et al. v. Municipality of Jefferson City et al.,* 187 Tenn. 467, 477, 216 S.W.2d 1.

It is probable that the Chancellor was of opinion that the averments of the bill alone present a fairly debatable question by reason of the fact that this ordinance, which was a part of the original bill, contained in the preamble thereof, a statement in general terms of the reasons for the annexation, as set out in T.C.A. sec. 6-309. We doubt the correctness of his ruling in this respect, however, because it fails to afford the affected citizen an opportunity to show by evidence that said allegations in the preamble of the ordinance may have been wholly without any evidence to support such purported conclusions of

fact. It will be recalled that in the Morton case, supra, voluminous proof was taken on both sides to support the respective contentions and as a result this Court held in the Morton case that a fairly debatable question was presented not by the pleadings but by the evidence.

█ Therefore, we come back to the determinative question whether we may take judicial notice of the report of the Community Services Commission created by Ch. 241, Private Acts of 1951. We think that we may and should so take judicial notice, for the following reasons:

1. The General Assembly of the State has found and declared in the preamble to said Ch. 241 that there is a great concentration of people and their homes, institutions and enterprises occupying the central portion of Davidson County that constitutes substantially one community and have a common need for those services and facilities customarily supplied by a local government formed for such purposes; that by reason of other conditions recited the people are in need of facts, analyses and proposals which can be obtained only through specialized study; hence the Commission is created.

2. Section 4 of the Act makes it the duty of said Commission to make a study of the situation relating to transportation, protection of life and property, promotion of health and sanitation, education and recreation and other matters affecting the welfare of the community; and as a result of said study, to make a report, of which copies shall be filed as a public record with the representatives and senators of Davidson County, the County Court Clerk of Davidson County, the City Court Clerk of the City of Nashville, the City Court Clerk of the City of Bellemeade and the City Clerk of the City of Berryhill

and the record clerk of any other municipality that may exist in Davidson County at that time.

3. That the Commission shall take such steps as it finds necessary to thoroughly inform the people throughout the community of the Commission's proposals and recommendations by use of newspapers, radio, television stations and all civic organizations and through the use of pamphlets and booklets made generally available to the community.

4. It will be presumed that the Commission created by Sec. 1 of the Act has performed the duty imposed upon it by law; in fact, the duty has been performed and same is reflected by the 201-page report which counsel for appellee has called to the attention of the Court, although the same is not, of course, a part of the actual record in this suit—if it were, there would be no need to take judicial notice of it.

5. It is certainly a well known fact generally in the Nashville area that the Nashville newspapers gave wide publicity to this report and the suggestions therein made.

Now when this report is examined in detail, it is found that the conclusions and recommendations made are based upon detailed studies, analyses, population statistics, engineering studies of pollution of the source of water supply, surface contamination by septic tanks and outdoor privies, etc.—all factual matters supporting the conclusions. It will be further observed when compared with the allegations of the original bill that the two are in many instances diametrically opposed one to the other.

It, therefore, seems to the Court that the inescapable conclusion is that if this demurrer were overruled and the

matter proceeded to proof, a lengthy and detailed adduction of evidence by both sides could only result at best in the finding by the Court that a fairly debatable question is presented as to whether or not the ordinance is reasonable or unreasonable and that under the circumstances, the Court will not undertake to substitute its judgment for that of the City officials who have enacted the ordinance under attack, as fully explained in the Morton case, supra.

Finally, with reference to the question of what the Court will judicially know or notice, the general statement of the rule in 20 Am.Jur., under "Evidence", p. 48, Sec. 17, it is said in part:

"Generally speaking, matters of judicial notice have three material requisites: (1) The matter must be a matter of common and general knowledge; (2) *it must be well and authoritatively settled and not doubtful or uncertain;* (3) and it must be known to be within the limits of the jurisdiction of the court."

We think our action in the premises does not violate requirement No. 2, supra. It is an undisputed fact that this Private Act has been enacted, that this Commission has been created and fulfilled its duties, and that this report has been filed as a public record containing the studies and the conclusions therefrom, although others may have a different opinion as to the ultimate conclusions to be drawn from the factual detail presented by these studies. Especially is this true, because we are here concerned only with the question whether a fairly debatable question is presented, but not with whether the conclusions of this report are indisputably true.

For the foregoing reasons, we, therefore, must respond adversely to the insistences of the appellant in regard to the second question posed.

Before closing, it may be advisable, although it would hardly seem necessary, to point out that there is no parallel between *State ex rel. Southerland v. Town of Greeneville*, 201 Tenn. 133, 297 S.W.2d 68, and the present suit. Presented there was ony the ordinary situation of a bill containing allegations of fact which were attempted to be met by a demurrer, without more. There was nothing in the face of the bill nor was any matter called to the attention of the Court of which judicial notice could be taken, either of which might have rendered the bill vulnerable to attack by a demurrer.

The decree of the Chancellor in the case of Mrs. Schmittou is affirmed.

Now in the case of State of Tennessee ex rel. Ernest W. Colbert, consolidated for trial with the present case, although there are 16 grounds of demurrer, all of which were overruled by the Chancellor, we think that said demurrer simply raised the same two material questions heretofore dealt with and disposed of adversely to the appellant.

The only additional matter contained in the bill in this second case is that his property should not be annexed for the reason that it is farm land commonly called river bottom land which has been inundated in recent years by the overflow of the Cumberland River and is not susceptible of development for residential usage and accordingly has very little value. Also that annexation of same will interfere with the use of same for farming, and related purposes, and that he will be paying taxes to

the City of Nashville but will not receive the services which, although he does not now enjoy as a resident of the County, he has a right to expect under annexation.

This question has been foreclosed against him in the Morton case, supra, holding that such facts do not make the ordinance unreasonable.

The decree of the Chancellor in this case is likewise affirmed.

All concur.

FELTS, JUSTICE (concurring).

I concur in all that is said in the opinion of the Court written by Justice Swepston but desire to add a word more.

While I agree that in considering the bill on demurrer, we should take judicial notice of the report of the Community Service Commission, for the reasons set out in the opinion, my difficulty arose from the impact of these two rules: (1) the fundamental rule that on demurrer the bill's averments of fact are to be taken as true; and (2) the rule, as stated by Thayer[1] and Wigmore,[2] that matter judicially noticed is disputable and may be shown by evidence to be untrue.

Manifestly, the effect of taking the bill's averments as true would be to make an issue upon many matters judicially noticed in the report, if such matters be disputable. This would necessarily call for an answer and proof on such issues.

But there is no such difficulty, if the matters judicially

---

1. Thayer, A Preliminary Treatise on Evidence at the Common Law 308 (1898).
2. 9 Wigmore on Evidence (3rd ed., 1940, c. 2567(8)).

noticed in said report are indisputable, not open to be averred against even by the allegations of the bill. I think the very definition of a matter judicially noticed means that it is to be taken as true and is indisputable. This is very clearly shown by the able and helpful article, "Judicial Notice," 57 Harv.L.Rev., January 1944, 269-294, by Professor Edmund M. Morgan; see also the cases collated in the annotation in 45 A.L.R.2d 1069, 1070-1072.

For this additional reason, I agree with the Court's opinion.

### On Petitions to Rehear

SWEPSTON, JUSTICE.

A petition to rehear has been filed in behalf of each of the appellants in these consolidated suits. Before considering the merits of same it is necessary to dispose of the appellees' insistence that these petitions do not comply with Rule 32 of this Court in regard to petitions for rehearing. The petitions were filed with the Clerk within ten days after the announcement of the opinion of the Court but they were not "presented" to the Court.

In the first place, this rule as it reads literally has been honored more in the breach than otherwise. These petitions were handled in the same manner that they have been handled heretofore as far back as any member of this Court can recall. Also, when the Court is not sitting it is impossible to present such a petition to the Court. Therefore, we think this is no ground for our refusing to consider the petitions.

The question is raised also in behalf of appellees that the last paragraph of T.C.A. sec. 6-310 ought to be

interpreted to mean that no petition to rehear will lie in these annexation cases. This paragraph provides:

"If on appeal judgment shall be against the validity of such ordinance, an order shall be entered vacating the same; otherwise, it shall become operative forthwith by court order and shall not be subject to contest or attack in legal or equitable proceedings for any cause or reason, the judgment of the appellate court being final."

We think this has no application to our rule allowing petitions to rehear. The petition to rehear filed in behalf of Mrs. Schmittou asserts two grounds: (1) that the Court erroneously overlooked the fact that it sits as an appellate court only to review the actions of lower courts; and (2) that it erred in taking judicial notice of the report of the Community Services Commission.

The second ground is overruled as it presents no new question but a question which was fully considered by the Court under the original opinion.

Under the first ground it is asserted that the record shows that the report of the Community Services Commission was not before the Chancellor and was not in any way considered by him; and that when we stated in the original opinion that we doubted the correctness of his ruling and then assigned a different reason for reaching the same result, we were violating the Constitution and the decisions to the effect that this Court is of appellate jurisdiction only. He cites *Wright v. Nashville Gas & Heating Co.*, 183 Tenn. 594, 603, 194 S.W.2d 459, 463.

█ We first respond to the above statement in the brief that the record does not show the Chancellor considered said report. There is no record except the bill,

the demurrer thereto and the opinion of the Chancellor. Counsel for appellee insist the reason for this statement by counsel for appellant Schmittou is that he was not one of the counsel who tried the case before the Chancellor and that the question of taking judicial notice of this report was presented to the Chancellor and he quotes from his brief to that effect. Of course, if this case had been tried upon proof taken, certainly the wise thing for counsel to have done would have been to let the record show that the matter was called to the attention of the Court in regard to taking judicial notice of same. However, in the situation in the case at bar there is no place for a bill of exceptions; the case is presented simply on the allegations of fact in the bill which facts must be taken as true, except where contradicted by matters of which the Court may take judicial notice, as in this case. Gibson's Suits in Chancery (4th Ed.) Sec. 304, (5th Ed., Sec. 311).

In 3 Am.Jur., under Appeal and Error, 376, Sec. 834, it is stated that the general rule is, if the attention of the trial court is not called to a fact within its judicial knowledge and such fact is not judicially noticed below, the appellate court will not take judicial notice of it, but the text further states "not infrequently, however, in spite of this general rule, appellate courts have taken cognizance of facts which had been ignored by the trial court; and it seems clear that the failure or refusal of a trial court to take notice of a proper fact does not necessarily prevent the appellate court from doing so." Under Note 11 are cited several cases, one of which appellees have in the brief, which is styled *New York Indians v. United States,* 170 U.S. 1, 18 S.Ct. 531, 42 L.Ed. 927. In that case the Supreme Court of the United States took

judicial notice of certain documents from the executive and legislative departments supporting the claims of the Indians, although they were not called to the attention of the court below nor referred to in the lower court's findings of fact.

In 31 C.J.S. Evidence sec. 13b, p. 521, Note 76, the case of *American Legion Post No. 90, etc. v. First Nat. Bank & Trust Co. of Mamaroneck,* 2 Cir., 1940, 113 F.2d 868, 872, it is said:

"Defendants assert in their brief that this regulation was not called to the attention of the court below, and that therefore we cannot take judicial notice of it. It seems, however, that, while an appellate court is not obligated to notice matters not brought to the attention of the trial court, *Line v. Line,* 119 Md. 403, 86 A. 1032, Ann.Cas.1914D, 192, yet it may take such notice where necessary either to affirm, or to show the impropriety of, a decision below. *Hunter v. New York, O. & W. R. Co.,* 116 N.Y. 615, 23 N.E. 9, 6 L.R.A. 246," (Obviously physically false testimony.)

Then as to a situation such as we have here, i. e., a demurrer and judicial notice of facts contrary to allegations of fact in the bill see *Nev-Cal Electric Securities Co. v. Imperial Irr. Dist.,* 9 Cir., 85 F.2d 886, 904, certiorari denied 300 U.S. 662, 57 S.Ct. 493, 81 L.Ed. 871.

After all, however, it does not make any difference whether this matter was called to the attention of the Chancellor, because he reached the right result on the very question to be decided. The question to be decided, as stated in the original brief on page 23 in behalf of Mrs. Schmittou and on page 876 of the original opinion of this Court, is "Does the original bill contain sufficient

allegations to permit the introduction of proof to show that the annexation ordinance in question is unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and the citizens and property owners of the municipality.''

In a long line of cases this principle has been applied and recently in *Denny v. Wilson County,* 198 Tenn. 677, 686, 281 N.W.2d 671, where a demurrer to a declaration was sustained by the trial court on a ground not approved by the Supreme Court but he nevertheless reached the right result and this Court affirmed on another ground, that of estoppel.

That is exactly the analogous situation to what we have here and it is the proper exercise of appellate jurisdiction.

*Wright v. Nashville Gas & Heating Co.,* supra, we think is not at all in point. That was a suit filed for a declaratory judgment to declare invalid a part of the charter of the Nashville Gas & Heating Company, which bill was filed by an individual solely on the basis that he was a taxpayer. The first ground of the demurrer was that he had no right of action as such. On his appeal this Court sustained the first ground of demurrer and declined to consider any other grounds because they had not been considered by the Chancellor. That is a situation of frequent occurrence and this Court will not under those circumstances pass on other grounds of demurrer that had not been considered by the court below for the reason that the other and different grounds raise entirely different issues. That case cites *Dodds v. Duncan,* 80 Tenn. 731. It likewise is wholly inapplicable to our present sit-

uation. There, a judgment in the trial court in favor of the plaintiff was reversed by the Supreme Court and costs of the appeal were adjudged against plaintiff and his supposed surety. Relief was sought by the surety in the Supreme Court upon his allegation that his name on the cost bond was not his act and deed or authorized in any manner. Naturally this presented an issue to be tried on evidence that was not in aid of any process issued by the Supreme Court and hence was not proper to be tried by the appellate court. This Court stated that the surety ordinarily could get relief from a judgment of the Supreme Court only by a suit in equity, but that same would not lie here because the amount involved was less than $50; that since the Supreme Court could not try such an issue of fact, the following disposition was made of the case, ''if no issue is tendered upon the facts alleged in the petition (for supersedeas), the supersedeas will be made perpetual. If issue is joined on the fact whether the bond in question was the act and deed of the petitioner, an order will be made declaring the rights of the parties to have the issue tried, and the cause for that purpose will be remanded to the circuit court'' etc. (Parenthesis ours.)

By way of recapitulation then, the Chancellor felt that the issue stated, supra, was to be determined on the basis that the denials in the answer were determinative of the issue, whereas this Court, not agreeing with that theory, is of opinion that the facts stated in the report of which we take judicial notice show that the ordinance in question is not unreasonable in the context stated in the statute and in the issue quoted, supra.

Accordingly the petition of Mrs. Schmittou to rehear is overruled.

The petition to rehear filed in behalf of Ernest W. Colbert is a re-argument of the matters disposed of after full consideration by the original opinion except the question of due process. Complaint is made that the Court did not pass upon his propositions of law 1 and 2. We have no fault to find with same but simply did not consider them controlling in this case and are of the same opinion still.

The assertion that taking judicial notice of this report and thus denying the petitioner an opportunity to present evidence amounts to a denial of due process is in our opinion a proposition wholly unsupported by any case to be found in the books. Judicial notice is a method of dispensing with the necessity for taking proof. As stated in the original opinion on page 879, we are here concerned only with the question whether a fairly debatable question is presented, but not with whether the conclusions of this report are indisputably true, because if a fairly debatable question is presented, the judgment of the City officials in the enactment of this ordinance will not be interfered with by this Court.

Both petitions are overruled.

All concur.