IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2025

## IN RE THE NAME CHANGE OF ALESSANDRIA A. ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 83CH1-2024-CV-121  Louis W. Oliver, Chancellor**

_____

**No. M2024-01333-COA-R3-CV**

_____

Father appeals the trial court's order changing his children's surnames from his surname to another family name. Due to the deficiencies in Appellant's brief, we do not address four of his stated issues. As to his final issue, because the appellate record contains no transcript or statement of the evidence as required by the Tennessee Rules of Appellate Procedure, we have no evidence to review. Accordingly, we must presume that the evidence presented at the final hearing supports the trial court's conclusion that the name change was in the children's best interests. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

Christopher A, Gallatin, Tennessee, appellant, pro se.

Thomas Jay Martin, Jr. and Kylene Ross, Gallatin, Tennessee, for the appellees, Stacy A. and Lisa R.

## OPINION

### I. Background

Appellant Christopher A. ("Father") and Stacy A. ("Mother") are the parents of two minor children, A.L.A. (d/o/b October 2009) and N.C.A (d/o/b December 2014), (together, the "Children").[1] Lisa R. ("Grandmother") (together with Mother, "Appellees") is the

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to

maternal grandmother of the Children. Mother and Father are divorced.

On June 6, 2024, Appellees filed a petition in the Chancery Court for Sumner County, Tennessee ("trial court") seeking to change the Children's surname. The petition stated that Grandmother had legal custody of the Children by order of the Sumner County Juvenile Court,[2] and that Mother consented to the name change, believing it to be in the Children's best interests. As grounds for the name change, Appellees alleged that Mother and Father were arrested, had charges pending against them, and that the family's surname was unusual and recognizable and caused the Children embarrassment due to the parents' arrests. Specifically, the petition alleged that Father had been charged with: (1) continuous sexual abuse of a child (2 counts); (2) sexual battery by an authority figure (5 counts); (3) aggravated sexual battery (7 counts); (4) rape of a child (7 counts); and (5) rape (5 counts). The petition also alleged that Mother had been charged with: (1) aggravated child abuse/neglect/endangerment (2 counts); (2) child abuse/neglect/endangerment; and (3) violation of conditional release (2 counts). When the petition was filed, Father was incarcerated on the pending charges, but Mother was not.

On June 13, 2024, Father filed a one-page document stating that he did not agree to the name change. In this document, Father also indicated his desire to be physically present for any hearings in the matter. To that end, on July 15, 2024, Father filed a motion asking to attend the July 22, 2024, final hearing in person. The trial court denied the motion.

On July 22, 2024, the trial court held the final hearing on the petition for name change. The following witnesses testified: (1) Appellees; (2) the Children; and (3) the paternal grandfather. A certified copy of the indictments concerning Father's pending criminal charges was admitted into evidence.

On July 25, 2024, the trial court entered an order granting the Children's name changes. The trial court found that: (1) the charges pending against Father alleged abuse against the oldest child's friends; (2) the charges were an embarrassment and caused the Children humiliation; and (3) there had been local publicity concerning the charges against Mother and Father and many local citizens were familiar with the charges against the parents. The trial court also found that both Children testified that they wanted their surname to be changed. Specifically, the trial court found that the oldest child testified that she was embarrassed and upset about the criminal charges, and she faced ridicule from her peers and scorn from others in the community. The trial court considered the potential effect a name change could have on the relationship with each parent. Given that Mother was in favor of the name change, the trial court found that it would not affect the mother/child relationship. As to the Children's relationship with Father, the trial court first considered Father's objection to the name change. Although the trial court found that the

_____

protect their identities.
[2] Although Grandmother had legal custody of the Children, they lived with Mother.

relationship between Father and the Children could be affected, the trial court concluded that it would not be significantly affected because Father maintained his parental rights. The trial court also considered the respect of the community and the negative effect Father's criminal charges had on the community's opinion of the family's surname. While the Children had always been known by Father's surname, the trial court found that changing the name was appropriate. Specifically, the trial court found that the oldest child would be starting a new school and that changing her name before she entered that school would benefit her. The trial court ordered that the Children's surname be changed to another family name, a former name of Grandmother. Father filed a timely notice of appeal.

## II. Issues

Father raises five issues for our review, as stated in his brief:

1. Whether the maternal grandmother has standing to request a name change.

2. Whether the [trial] court abused its discretion by ordering the surname change without hearing testimony from Father.

3. Whether [] Father's due process rights were violated by not having him present at the hearing.

4. Whether the evidence submitted was sufficient to justify the name change.

5. Whether the [trial] judge exhibited the appearance of bias by not having Father present at the hearing.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." **Brunswick Acceptance Co., LLC v. MEJ, LLC**, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

As an initial matter, while we are cognizant of the fact that Father is representing himself in this appeal, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." **Brown v. Christian Bros. Univ.**,

428 S.W.3d 38, 46 (Tenn. Ct. App. 2013).  This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts."  ***Hodges v. Tenn. Att'y Gen***., 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing ***Paehler v. Union Planters Nat'l Bank, Inc***., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)).  Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe."  ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing ***Edmundson v. Pratt***, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); ***Kaylor v. Bradley***, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995)).

## A. Waived Issues

Due to Father's failure to comply with Tennessee Rule of Appellate Procedure 27, he has waived four of his five stated issues.  Tennessee Code Annotated section (a)(7)(A) provides that an appellant's brief shall contain:

> (7) An argument, which may be preceded by a summary of argument, setting forth:
>
> > (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, **with citations to the authorities** and appropriate references to the record (which may be quoted verbatim) relied on;

Tenn. R. App. P. 27(a)(7)(A) (emphasis added).  The Tennessee Supreme Court has explained that "[a]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of [Tennessee Rule of Appellate Procedure] 27(a)(7)."  ***Hodge v. Craig***, 382 S.W.3d 325, 335 (Tenn. 2012); *see also* ***Forbess v. Forbess***, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) ("This [C]ourt has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal."); ***Bean v. Bean***, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").  As this Court has stated:

> "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."  ***Sneed v. Bd. of Prof'l Responsibility of Sup. Ct***., 301 S.W.3d 603, 615 (Tenn. 2010).

***

"[T]he Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." ***Bean***, 40 S.W.3d at 54-55 (citing ***Crowe v. Birmingham & N.W. Ry. Co.***, [1 S.W.2d 781] (1928)). "[A]ppellate courts may properly decline to consider issues that have not been raised and briefed in accordance with the applicable rules." ***Waters v. Farr***, 291 S.W.3d 873, 919 (Tenn. 2009).

***Clayton v. Herron***, No. M2014-01497-COA-R3-CV, 2015 WL 757240, at *2-3, (Tenn. Ct. App. Feb. 20, 2015).

Concerning the first waived issue, *i.e.,* whether Grandmother had standing to request a name change, Father's entire argument is:

Grandmother [] submitted a "Petition for Temporary Protective Custody" which was filed on March 6, 2023 (Appendix 17). TCA 36-1-102 defines "parental rights" as "legally recognized rights and responsibilities to act as a parent, to care for, to name, and to claim custodial rights." Father's parental rights have not been terminated[,] and he can find no statute or case law conferring the parental right "to name" to temporary custodians or guardians. TCA 37-1-102(9) defines "custody" to mean the "control of actual physical care of the child . . . custody shall not be construed as the termination of parental rights." Accordingly, Father believes [Grandmother] lacked standing to petition for a name change of his biological children[.]

This portion of Father's brief fails to provide any authority or substantive argument concerning the stated issue, *i.e.,* whether Grandmother had standing to request a name change for the Children. Indeed, Father's entire argument is that: (1) his parental rights have not been terminated; (2) he found no law "conferring the parental right 'to name' [a child] to temporary custodians;" and (3) custody shall not be construed as the termination of parental rights. Based on the foregoing, Father alleges that Grandmother lacked standing to file a petition to change the Children's surname. Given that Father has provided no authority or substantive argument as to his stated issue, if this Court were to address same, we would be forced to construct Father's argument for him. This is not our role. *See* ***Sneed***, 301 S.W.3d at 615. At best, Father's argument is skeletal and does not comply with the briefing requirements set out above. ***Id.***

Notwithstanding the foregoing, Father's above "argument" ignores the fact that Mother also petitioned the trial court for the name change. On appeal, Father does not challenge *Mother's* authority or standing to file the petition. As such, the question of whether Mother could file the petition is answered in the affirmative based on Father's waiver of this issue. Because Mother could file the petition on behalf of the Children, the

issue of Grandmother's standing is pretermitted.

Father's second issue questions whether the trial court abused its discretion by ordering the Children's name change without hearing testimony from him. As to this issue, Father's entire argument is:

> Father asserts the [trial] court abused its discretion when it denied his "right to be heard at a meaningful time and in a meaningful manner." The order shows the [trial] court only considered [] Father's written objection/statement (Record, Page 7). This statement was Father's response to the petition and was never intended to function as testimony (Record, Page 5). In fact, the response and a motion filed on June 15, 2024 (Record, Page 6) both clearly state Father's desire to be present. "The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." (*Lynch* [*v. City of Jellico*], 205 S.W.3d [384, 391 (Tenn. 2006)]). The morning of July 22, 2024 Father was told by the Sumner County Correctional officer on duty to come to the hallway to attend his hearing via remote video. After sitting idly for approximately 30 minutes, Father was informed the video system was not working properly and they would come get him later to transport him to court. Father was returned to his cell but never transported and was given no explanation. Father contends his absence at the July 22, 2024 hearing was due to no fault of his own and that the [trial] court should have had him transported or rescheduled the hearing.

As an initial matter, Father's "argument" alleges certain facts that are not in the record. The only facts this Court may consider on appeal are those "established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14." Tenn. R. App. P. 13(c).[3] Tennessee Rule of Appellate Procedure 14 states that appellate courts may consider "facts concerning the action that occurred after judgment." Tenn. R. App. P. 14. Father's allegations concerning what transpired the morning of the final hearing do not appear in the appellate record, are not facts subject to judicial notice, and do not satisfy the requirements of Tennessee Rule of Appellate Procedure 14. Accordingly, we will not consider them. Furthermore, Father's

---

[3] Judicial notice is "a method of dispensing with the necessity for taking proof." *State ex rel. Schmittou v. City of Nashville*, 345 S.W.2d 874, 883 ([Tenn.] 1961). "[It] is generally defined as a judge's utilization of knowledge other than that derived from formal evidentiary proof in the pending case." *Counts v. Bryan*, 182 S.W.3d 288, 291 (Tenn. Ct. App. 2005) . . . . Historical facts, such as who, what or when, are more likely to satisfy this criteria, as opposed to opinions, which are more likely to be subject to dispute. [*Counts*, 182 S.W.3d at 293].

*Bank of Am., Nat'l Ass'n v. Meyer*, No. M2014-01123-COA-R3-CV, 2015 WL 1275394, at *2-3 (Tenn. Ct. App. Mar. 17, 2015).

"argument" contains no citation to authority nor any substantive argument concerning how it was an abuse of the trial court's discretion to order the Children's name change without Father's live testimony. The only law Father cites in this section concerns due process rights, which he attempts to raise in his third issue, discussed *infra*. Again, this Court cannot construct Father's argument for him. His second issue is waived. ***Sneed***, 301 S.W.3d at 615.

Father's third issue concerns whether his due process rights were violated by his absence at the hearing. Father's entire argument concerning the third issue is:

> Father contends his due process rights were violated when the [trial] court failed to have him present at the hearing. Father submitted two requests, one in his response to the petition (Record, Page 5) and another in his "motion for a pick-up/transport order" (Record, Page 6), to be present at the July 22, 2024 hearing. The jail staff were clearly aware of his hearing and attempted to have Father appear via remote video. When that failed Father was told he would be transported later[] but never was and no explanation was given. Father contends the actions by jail staff on July 22, 2024 clearly indicate the [trial] court intended for him to appear. The absence of Father was due to no fault of his own. Father suggests the [trial] court could easily have had him transported as this is a routine activity—the Sumner County jail transports inmates almost daily to the courthouse which is only a few blocks away. Alternately, the [trial] court could have rescheduled the hearing. By proceeding without him[,] Father was denied any way to testify, examine witnesses, or take any other action that day.

As an initial matter, Father fails to identify whether his substantive or procedural due process rights were violated. He also fails to cite to either the United States Constitution or the Tennessee Constitution, from which such rights stem. Although Father quoted ***Lynch*** in his previous argument, *see supra*, he fails to expand on that argument to provide any substantive analysis of the issue, and he provides no authority to support his contention that his due process rights were violated. Rather, Father makes only general arguments that are based on evidence not in the record. As such, Father's third issue is also waived. ***Sneed***, 301 S.W.3d at 615.

Father's fifth issue is whether the trial judge exhibited the appearance of bias by not having Father present at the hearing. The entirety of that argument is:

> Father expresses concern[] as to whether the judge exhibited the appearance of bias when [he] chose to hold the hearing after realizing Father would be unable to attend. The judge could have ordered Father transported from the jail. Again, based on the jail attempting to have Father appear via video, then, when that failed, telling him they would return later to transport but not

doing so, it is evident that 1) the judge intended for Father to attend and (2) the judge made a decision to hold the hearing in spite of Father's absence. Additionally, the judge offered opinions such as on the effect of the name change on Father's relationship with the Children (Record, Page 8). These actions may be interpreted as bias, perhaps unintentionally, for the petitioner[s] and against Father.

Again, as discussed, *supra*, Father alleges certain facts concerning the day of the final hearing that are not in the record. We cannot consider these "facts." Furthermore, the foregoing does not constitute an appellate argument because Father merely speculates that the trial judge was biased, "perhaps unintentionally," against Father because the trial court held the hearing in Father's absence. As with the other waived issues, Father provides no substantive argument concerning this issue. Furthermore, Father fails to explain how any alleged bias negatively affected him. Moreover, Father provides no authority to support his argument that the trial court's failure to transport him to the hearing demonstrated the trial judge's bias against him. Finally, the only "fact" Father alleges to support his argument is that the trial court made a finding concerning the effect a name change would have on the Children's relationship with Father. As discussed below, the trial court was required to make such findings and did so based on the evidence presented at the hearing. Because Father failed to construct a proper appellate argument on this issue, it is waived. **Sneed**, 301 S.W.3d at 615. We now turn to the remaining issue.

### B. Whether Evidence was Sufficient for Name Change

Father's final issue concerns whether the evidence presented was sufficient to justify the Children's name change. It is well-established that courts should not change a child's surname unless such change is in the child's best interests. **Halloran v. Kostka**, 778 S.W.2d 454, 456 (Tenn. Ct. App. 1988). In **Barabas v. Rogers**, 868 S.W.2d 283 (Tenn. Ct. App. 1993), this Court outlined certain factors relevant to the determination of whether changing a child's surname would be in his or her best interest, to-wit: (1) the child's preference; (2) the change's potential effect on the child's relationship with each parent; (3) the length of time the child has had his or her present surname; (4) the degree of community respect associated with the present and proposed surname; and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either his or her present or proposed surname. **Id.** at 287. The party seeking to change the child's surname bears the burden of proving that such change would be in the child's best interest. **Id.** "The amount of proof required to justify the change is 'not insubstantial.'" **In re A.C.S.**, No. M2008-898-COA-R3-JV, 2009 WL 348510, at *3 (Tenn. Ct. App. Feb. 12, 2009) (quoting **Brown v. Baird**, No. 01A01-9704-JV-00148, 1997 WL 638278, at *1 (Tenn. Ct. App. Oct. 17, 1997)).

As an initial matter, Father's argument concerning this issue again contains several "factual" allegations that are not in the appellate record. Additionally, Father attaches

exhibits to his appellate brief that do not appear in the record. For the reasons discussed above, we will not consider factual allegations that are not supported by the evidence in the record, nor will we consider the exhibits attached to Father's brief as these were not admitted as evidence in the trial court. *See* Tenn. R. App. P. 13(c).

Turning to the trial court's order, in determining that it was in the Children's best interests to change their surnames, the trial court methodically considered each of the ***Barabas*** factors, *supra*. Concerning the trial court's findings of fact as to each factor, our review is constrained by the limited appellate record, which contains neither a transcript of the final hearing, nor a statement of the evidence. Rule 24 of the Tennessee Rules of Appellate Procedure outlines the requirements concerning both content and preparation of the appellate record. *See* Tenn. R. App. P. 24. Relevant here, the record on appeal ***shall*** consist of "the transcript or statement of the evidence or proceedings[.]" Tenn. R. App. P. 24(a)(3). The Rule provides that "the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). If no transcript is available, "the appellant ***shall*** prepare a statement of the evidence or proceedings from the best available means[.] The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(c) (emphasis added). The responsibility for the preparation of the transcript or a statement of evidence is on the parties, and the appellant has the primary burden to ensure that a proper record is prepared and filed in this Court. Tenn. R. App. P. 24; ***McDonald v. Onoh***, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989).

Where, as here, the issues on appeal turn on factual determinations, the absence of a transcript or statement of the evidence is essentially fatal to the party having the burden on appeal. Without a transcript or statement of the evidence, we have no way to determine whether the evidence was sufficient to support the trial court's findings of fact and its conclusion that the name changes were in the Children's best interests. It is well settled that, in the absence of a transcript or statement of the evidence, this Court must presume that there was sufficient evidence before the trial court to support its judgment. ***Baugh v. Moore***, No. M2013-02224-COA-R3-CV, 2015 WL 832589, at *3 (Tenn. Ct. App. Feb. 25, 2015); ***PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry***, 402 S.W.3d 654, 661 (Tenn. Ct. App. 2012); ***Outdoor Management LLC v. Thomas***, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007); ***Coakley v. Daniels***, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992); ***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). In other words, our ability to address Father's fourth issue in this appeal "is severely hampered if not eliminated by the absence of transcripts of the hearing or the trial, or any statement of the evidence prepared in accordance with Tenn. R. App. P. 24(c)." ***Rowe v. Rowe***, No. E2005-01023-COA-R3-CV, 2007 WL 541813, at *5 (Tenn. Ct. App. Feb. 22, 2007). Because there is no transcript or Rule 24 statement of the evidence, the facts found by the trial court are conclusive on appeal. Accordingly, we affirm the Children's name change.

## V. Conclusion

For the foregoing reasons, the trial court's order is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Christopher A. Because Christopher A. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE